George **SCHULTZ** et al., Plaintiffs in Error,

v.

**MORGAN SASH & DOOR COMPANY, a**
corporation, Defendant in Error.

No. 38400.

Supreme Court of Oklahoma.

Sept. 15, 1959.

Mac Q. Williamson, Atty. Gen., L. G. Hyden, Asst. Atty. Gen., James P. Garrett, Mangum, of counsel, for plaintiffs in error.

Leslie L. Conner, Oklahoma City, on the brief, James M. Little and Charles W. Conner, Oklahoma City, for defendant in error.

HALLEY, Justice.

Morgan Sash & Door Company, an Oklahoma corporation, with its office in Oklahoma City, filed this action in the District Court of Oklahoma County, against George Schultz and others, including Clarence Burch, Director of the Department of Wildlife Conservation of Oklahoma, and as Wildlife Conservation Director of Oklahoma, the agents, servants, Rangers and employees of such department, seeking judgment holding that the Legislative Act creating the Department of Wildlife Conservation Commission does not give them or it jurisdiction over "privately owned domesticated animals" nor "wild animals as domesticated pets", nor over "animals held in captivity" nor over "domesticated animals or the offspring thereof", owned by plaintiff; that defendants have no legal authority to enforce any law or rules for preservation or hunting of domesticated pets and animals nor the offspring thereof.

They prayed for a permanent injunction enjoining the individual defendants from exercising any jurisdiction over plaintiff or over pets and deer or domesticated animals of plaintiff, or declaring or enforcing any law or rule as to open or closed hunting season on the deer on plaintiff's farm located two miles east of Norman, Okla-

homa, where plaintiff has and keeps a number of domesticated deer and other tame animals for the benefit of its employees, officers and customers.

Plaintiff alleges that defendants are attempting to exercise jurisdiction over plaintiff's domesticated animals and depriving plaintiff of a valuable property right without due process of law, and that it has no adequate remedy at law and prays that they be restrained by a permanent injunction.

Defendants answered and denied all material allegations in plaintiff's petition but several facts were admitted, such as that plaintiff was an Oklahoma Corporation and holds the record title to the 160 acre farm where the deer are confined. Some 20 head of deer were purchased by the plaintiff from Lincoln Park Zoo, and have increased to 55 or 60 head about 40 of which are bucks and it has been considered necessary by plaintiff to decrease the number of buck deer.

Defendants alleged that the purposes for which plaintiff corporation was formed are "to engage in the general sash, door and lumber business and operating a lumber and supply business."

It was not disputed that the deer were enclosed in a six foot fence around the farm and with several strands of barbed wire on top of the fence.

This controversy arose by plaintiff placing an advertisement in the Daily Oklahoman, which was as follows:

"White deer. Season is open. Shoot your buck. $50.00 each. They are fat. Morgan Deer Farm, two miles east of Norman, Highway 9. Start shooting Saturday morning. Last one week."

The above ad appeared in October, 1957, and plaintiff received a letter from the Wildlife Department advising that their attention had been called to the fact that plaintiff had declared an open season on deer on its farm and charging a fee for hunting; that plaintiff had no such authority and that his acts were unlawful and that the only legal season for hunting deer was that set by the Wildlife Commission. It was not disputed that no open season for hunting deer was in effect at the time plaintiff's ad as above set out was published.

At the close of the evidence the trial court included his findings of fact and conclusions of law in his journal entry.

The court found that plaintiff had bought several white deer from the Oklahoma City Zoo about ten years previous to the trial; that the deer were placed on land owned by plaintiff in Cleveland County, which was enclosed and surrounded by a deer fence, and that the deer had been so enclosed for about ten years, and developed into a considerable herd; that the deer go to plaintiff's barn each day for feed and care, to be petted and played with. They will eat from the hand and from the evidence the deer appear to be tamed and domesticated animals or pets; that defendants, as members of the Oklahoma Wildlife Conservation Commission, have been attempting to exercise authority and jurisdiction over plaintiff's handling and disposition of the deer; and that plaintiff uses the land involved for the enjoyment and entertainment of its officers, stockholders, employees and customers.

The court concluded as a matter of law that in Oklahoma a person may own a wild or game animal as a domestic pet; that the Oklahoma Wildlife Conservation Act, 29 O.S. 1951 § 101 et seq., and its several provisions do not apply to privately owned domesticated animals; that the fact that deer may be classified as game animals does not preclude them from being tamed or domesticated or subject to private ownership; that under the facts, the plaintiff's deer are not subject to the provisions of the Wildlife Conservation Commission Act or the control, jurisdiction and authority of the members of that Commission; that defendants as members of that Commission do not have authority or jurisdiction over

plaintiff's deer under the facts before the court; that the question as to whether the deer are taxable or personal property is immaterial, since plaintiff made an attempt to pay such taxes; that plaintiff's use of the land involved is incidental to its incorporated purposes and is not ultra vires; that defendants must be enjoined from assuming or attempting to assume jurisdiction over plaintiff's control and disposition of its privately owned, tamed and domesticated deer held in captivity on its own property.

The court permanently enjoined the defendants from exercising or attempting to exercise jurisdiction or authority over plaintiff's control, handling and disposition of its tame and domesticated deer which are the subject matter of this action, so long as the facts and circumstances remain substantially the same as found herein. Costs in the sum of $90.85 were assessed against defendants.

 Defendants filed a motion for new trial and upon a denial of the motion they have appealed. They submit three propositions which are as follows:

"Under the doctrine 'He who comes into equity must come with clean hands', injunctive relief will be denied to one who has been guilty of unlawful conduct with reference to the matter in litigation; and it follows that where a corporation owns land outside of a city or town which is used for a purpose neither necessary or proper for carrying on the business for which it was chartered or licensed, the court will deny injunctive relief to aid and permit the corporation to continue such unlawful act.

"Under the clean hands doctrine, where a corporation performs acts which are ultra vires the purposes for which it was chartered or licensed, the court will deny injunctive relief to aid and permit the corporation to continue such unlawful and ultra vires acts.

"It is proper for defendants in an equity action where injunctive relief is sought by a plaintiff corporation to raise the issue of the lawfulness of plaintiff's ownership of land and the ultra vires nature of acts by plaintiff, since equity will not aid a wrongdoer."

Defendants contend that the plaintiff, a domestic corporation, is barred from equitable relief because it does not come into a court of equity with "clean hands." They contend that the ownership of the land where its deer are confined was unlawful and the maintenance of the farm was an act ultra vires to the purposes of the corporation, which was incorporated as a sash, door and lumber company. It is not denied that the land involved is outside the limits of any incorporated city or town.

The land not only held domesticated deer, but also buffalo, peacocks and ducks, all used for the recreation, enjoyment and amusement of the officers, directors, employees and customers of the plaintiff. The farm serves as a recreation place during the entire year, and sometimes business is transacted there with customers of the corporation. The deer had been on the farm for about ten years and plaintiff found it desirable to get rid of some of the excessive male deer over the number of does. The plaintiff sought to do this in accordance with its newspaper ad above set out and the Wildlife Commission threatened prosecution for allowing pet deer to be killed outside the open season as declared by the Wildlife Conservation Commission.

Did the ownership of the farm by plaintiff violate the law? We think the State is the only one that can question the acts of corporate officers, as being ultra vires, as pointed out in 18 O.S.1951, Section 1.29. We find that Section 1.20 of the same Title provides as follows:

"b. Nothing in this Act shall be construed as prohibiting the owning, holding, or taking of:

"(1) Such real estate as is necessary and proper for carrying on the business for which any corporation has been lawfully formed or domesticated in this State;"

The State of Oklahoma is not a party to this action, and the defense of ultra vires is not available to parties without the corporation. There is no proof that the plaintiff has done anything from which it seeks relief. In Whitney Arms Co. v. Barlow, 63 N.Y. 62, 20 Am.Rep. 504, the New York Court said:

"When acts of corporations are spoken of as ultra vires, it is not intended that they are unlawful, or even such as the corporation cannot perform, but merely those which are not within the powers conferred upon the corporation by the act of its creation, * * *"

No proof was offered by defendants to support their contentions that the owning of the farm by the corporation constituted an ultra vires act.

Regardless of the outcome of the real questions here involved, the right of the plaintiff to own the farm will not be affected. We think the ultra vires plea of the defendants has no merit under the facts before us.

 Does the Department of Wildlife Conservation have any authority over domesticated animals? We note that 29 O.S. 1951 §§ 302, 314, 507 and 515, make it clear that the Legislature did not intend that domesticated animals be covered by the provisions of the above mentioned sections. They are as follows:

"§ 302. Closed season—Hunting or possessing animals or wild turkey prohibited.

"* * * Provided, the provisions of this Act shall not apply to privately owned, domesticated animals."

"§ 314. Domesticated pets.

"Nothing in this Act shall prohibit any person from keeping any fish or wild animal as a domesticated pet."

"§ 507. Sale of animals or fish protected by law prohibited—Exceptions.

"* * * Provided, further, that this Section shall not apply to animals or birds held in captivity in accordance with the laws of this State. * * *"

"§ 515. Possession of game in closed season—Prima facie evidence—Menus.

"* * * except that domesticated animals or birds, or the offspring or eggs thereof, shall not be subject to the provisions of this Act. * * *"

We find no statutory law authorizing any individuals, commission or department to make or enforce game laws or seasons against citizens who own private, tame pets after their domestication and as long as they remain domesticated pets. There is no question but that wild animals may be tamed and thereby become privately owned and controlled. There is no provision in our statutes that the owner may dispose of domesticated animals only during the open season on wild animals. It was not alleged or proven that the plaintiff was hindering the enforcement of the game laws or violating any provision thereof.

The Supreme Court of the State of Washington in the case of Graves v. Dunlap, 87 Wash. 648, 152 P. 532, L.R.A.1916C, 338, went into the problem we have here very thoroughly. The rights of the owner of the animals were sustained. However, there the right to kill deer in a closed season was prohibited except under certain circumstances. We are unable to find that Washington had a similar statute to ours, set out above, which says that the section of the statute regulating the deer season shall not apply to "privately owned, domesticated animals." We think the action of the trial court in granting injunctive relief is correct.

 The trial court decreed that the defendant pay the costs of this action. Since this is primarily a public question and involves public officials of the State, we think neither party should recover their costs. Otherwise, the judgment is affirmed.

DAVISON, C. J., and JOHNSON, JACKSON and BERRY, JJ., concur.

WILLIAMS, V. C. J., and BLACK-BIRD, J., concur in part, dissent in part.

IRWIN, J., dissents.