**In the Matter of DANA P., An Alleged Deprived Child, Darilyn P., Appellant,**

v.

**The STATE of Oklahoma, Appellees.**

**No. 56729.**

Supreme Court of Oklahoma.

Nov. 23, 1982.

Rehearing Denied Jan. 25, 1983.

Albert Ghezzi, Doug Parr, Barry Benefield, Oklahoma City, for appellant.

Rebecca L. McNeese, Asst. Dist. Atty., Oklahoma City, for appellees.

DOOLIN, Justice:

A petition seeking termination of parental rights of Dana was filed December 10, 1979. Dana had not previously been adjudicated a dependent and neglected child. The alleged grounds for termination were: failure to provide proper parental care, failure to provide support and abandonment.

The allegations were supported by a written investigative report prepared by a social worker from the Department of Institutions, Social and Rehabilitative Services (DISRS). The investigation was made at the request of Mrs. V., present adoptive mother. The report stated that Dana, then aged two, had been left with Mr. and Mrs. V. since birth. Mr. and Mrs. V., related to Dana's natural father by marriage, had provided Dana's sole support and care since birth, with the exception of brief and sporadic periods during which mother assumed this responsibility. Mother was stated to have no known permanent address or place of employment, but subsisted by living with

various friends. Father's whereabouts were also stated to be unknown.[1]

Temporary custody was placed in DISRS on the date the petition was filed. An affidavit for service by publication was filed which recited that due diligence had been exercised in attempting to locate the natural parents. Service was directed in a manner authorized by law. An adjudicatory hearing was set for January 7, 1980. Notice of the termination hearing was published December 21, 1979.

Neither parent appeared at the adjudicatory hearing. No transcript was made of the hearing. The termination order included findings that: (1) service had been had by publication, the whereabouts of the parents being unknown; (2) actual notice had been given to mother by Mrs. V. a few days prior to the hearing and (3) Dana should be declared a deprived child and parental rights terminated.

Mr. and Mrs. V. subsequently petitioned for adoption. The final decree was entered November 5, 1980.

On March 3, 1981, nearly fourteen months after the termination hearing, mother filed a motion to vacate the judgments based on lack of personal jurisdiction. Mother alleged that she did not learn of the adjudicatory hearing until several days after it had been held. She further alleged that service by publication was invalid as the state failed to exercise diligence in attempting to locate her. She asserted that she was readily available for personal service as Mr. and Mrs. V. knew of her residence and place of employment at all times prior to the adjudicatory hearing.

Mother appeals from the denial of this motion. The primary issue presented in this case is whether the method of notification used deprived mother of due process and the court of jurisdiction to terminate her parental rights. Mother also argues that the trial court was without authority to terminate parental rights without first affording her a three month period in which to correct the conditions leading to Dana's adjudication as a deprived child under 10 Okla.Stat.1981, § 1130(A)(3).

## I

■ Before jurisdiction may be exercised over a person in a proceeding which may directly and adversely affect a legally protected interest, a method of notification must be used which is reasonably calculated to provide knowledge of the proposed exercise of jurisdiction and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Bomford v. Socony Mobil Oil Co.*, 440 P.2d 713 (Okl.1968). In *Bomford*, we recognized that due process is not a rigid doctrine imposing strict notice requirements; rather, the type of notice required will necessarily vary with the circumstances. 440 P.2d at 718.

■ Actual notice is the preferred method of satisfying due process requirements, but it has long been recognized that actual notice is not always feasible. As the United States Supreme Court said in *Mullane*:

"This Court has not hesitated to approve of resort to publication as a customary substitute ... where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." 339 U.S. at 317, 70 S.Ct. at 658.

Thus, notice by publication is not, *per se*, a denial of due process. The trial court was without jurisdiction to terminate mother's rights only if notice by publication was inappropriate in this case.

The procedural due process requirements for termination of parental rights in this state are codified in 10 Okla.Stat.1981, § 1131 which provides in pertinent part:

"A parent shall be given *actual notice* of any hearing to terminate his parental rights. The notice shall indicate the re-

---

1. Father is not participating in this appeal.

lief requested, and the hearing shall not be held until at least ten (10) days after the receipt of such notice, except with the consent of the parent, if known. If the court *finds* that the whereabouts of the parent cannot be ascertained, it *may* order that notice be given by publication *and* a copy mailed to the last known address of the parent. The notice shall be published once in a newspaper of general circulation in the county in which the action to terminate parental rights is brought, and the hearing shall not be held for at least ten (10) days after the date of publication of the notice. Where a parent has not received actual notice of the hearing at which he is deprived of his parental rights, the order depriving him of those rights shall not become final for a period of six (6) months after the hearing." (Emphasis supplied).

Mother asserts the following deviations from the statutory provisions:

1) Actual notice "a few days" prior to the hearing is insufficient—such notice must be given ten days before the hearing in order to be effective.

2) The trial court must make a finding that a diligent search to locate the parents was made *before* service by publication is authorized.

3) Notice and summons must be mailed to the parents' last known address whenever service is made by publication.

To support her challenges to the validity of service, mother relies primarily on *Tammie v. Rodriquez,* 570 P.2d 332 (Okl.1977). In *Tammie,* we stated:

"10 O.S.1971, § 1131 requires a parent be given actual notice of any hearing to terminate parental rights. If and only if the court finds the whereabouts of the parents cannot be ascertained, may notice be given by publication. In addition to publication a copy of the notice must be mailed to parents' last known address." 570 P.2d at 334.

In relying on *Tammie,* mother overlooks several significant factual distinctions. In *Tammie,* the mother's parental rights were terminated by default after a prior adjudication that her child was deprived. Service was made by publication although the mother's home and business addresses appeared in the record and were known to the court. In fact, personal service had been attempted five times prior to the termination hearing. No notice was mailed to the mother's home and she had no actual notice of the hearing until several days after her parental rights were terminated.

■ The major difference between *Tammie* and the instant case is that there the trial court had the mother's address in its own records and her whereabouts were known. In the absence of a complete record (here, the failure to make a record of the termination hearing), the findings of fact and law by the trial court are presumed to be true. *Board of Commissioners of D. County v. Wright,* 8 Okl. 190, 57 P. 203 (1899). We must, therefore, accept that mother received actual notice a few days before the hearing, as found by the trial court.

■ It is elementary that judgments which are void for lack of personal or subject matter jurisdiction are subject to attack at any time, either directly or collaterally. *Barton v. Alpine Investments, Inc.,* 596 P.2d 532 (Okl.1979); *Scoufos v. Fuller,* 280 P.2d 720 (Okl.1955); *Mid-Continent Pipeline Co. v. Seminole County Excise Board,* 194 Okl. 40, 146 P.2d 996 (1944). However, such defect must appear on the face of the record. When the defect in jurisdiction is latent, i.e. when it can be shown only by resort to extrinsic evidence, the attack must be brought either within the applicable time limit after rendition of the judgment, or within a reasonable time after discovery of the defect, provided reasonable diligence was exercised.[2] Ordinarily, a default judgment taken solely on ser-

**2.** For a complete discussion of jurisdictional attacks on final judgments, see Morgan, Delayed Attacks on Final Judgments, 33 Okla.L. Rev. 45 (1980) and Delayed Attacks on Final Judgments—Part II, 33 Okla.L.Rev. 738 (1980).

vice by publication may be reopened within three years from the date judgment was rendered. 12 Okla.Stat.1981, § 176 and § 1033. However, 10 Okla.Stat.1981, § 1131 limits the time to reopen to six months when parental rights are terminated and parents had no actual notice of the termination hearing. The general rule is that the specific statute (or that of a later date) controls over the general statute. *Sebring v. Federal Deposit Insurance Corporation,* 401 P.2d 479 (Okl.1963).

In considering mother's attack on the trial court's jurisdiction, then, we are limited to an examination of the record. Every jurisdictional fact not negatived on the face of the record must be presumed to be true. *Bomford v. Socony Oil Co.,* 440 P.2d 713 (Okl.1968); *Yahola Oil Co. v. Causey,* 181 Okl. 129, 72 P.2d 817 (1937).

■ Even if mother did not receive actual notice as found by the trial court, the publication of notice was sufficient to meet due process requirements and to fulfill the statutory requirements of 10 Okla.Stat. 1981, § 1131, under the circumstances of this case. Mother argues that 10 Okla.Stat. 1981, § 1131[3] and 12 Okla.Stat.1980, Ch. 2, App. Rule 16[4] require that a hearing on the whereabouts of parents and a specific finding that due diligence was exercised in attempting to locate them is required *before* service by publication may be authorized.

The mandates of Section 1131 and *Bomford* have clearly been met. The "pertinent facts" of *Bomford* were before the Court when the order for publications notice was rendered. Supporting documents advised the Court that the parents' whereabouts were unknown, that the Mother had left the child with the Appellees since birth and that the Mother had no known address.

While Mother complains that the finding of "due diligence" was conclusory, her

argument is in itself "conclusionary." She states her address was known to the parties, period. She makes no attempt to produce facts which might lead one to that conclusion.

■ Where, as here, the journal entry and termination order recite that the party's whereabouts are unknown and have approved the service given, such recital is to be treated as an effective adjudication of compliance with the publication provision. Cf. *Bomford v. Socony Oil Co.,* supra; *Barton v. Alpine Investments, Inc.,* 596 P.2d 532 (Okl.1979) *cert. denied* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667.

In this case the requirement of a specific finding, supported by appropriate facts, that the parents' whereabouts was unknown and that due diligence has been exercised in trying to locate them, was complied with. See *Bomford,* supra. We strongly urge trial courts to include such recitals in journal entries of default judgments, particularly when parental rights have been terminated by default.

■ Finally, jurisdiction of the trial court is not defeated by the failure to mail notice of the termination hearing to mother's last known address. 10 Okla.Stat.1981, § 1131 provides that the court *may* allow service by publication and mailing of notice to the last known address. In *Tammie* such mailing was required because the mother's address *was* known to the court. In this case, no address for mother, past or present, appeared in the record. The law does not require useless or impossible acts.

## II

As a second ground for vacating the judgment, mother asserts that the trial court erred in terminating parental rights without affording her three months to cor-

**3.** 10 Okla.Stat.1981, § 1131 provides that if the trial court *finds* that the whereabouts of the parent cannot be ascertained, it may order notice by publication and by mailing a copy to the last known address.

**4.** 12 Okla.Stat.1981, Ch. 2, App. Rule 16 requires an inquiry by the court; in open court or

in chambers, to determine that a diligent and meaningful search of all reasonably available sources has been made when a default judgment is sought. The court should include a recital of its findings in the journal entry of judgment. The judicial inquiry is mandatory; the recital is not.

rect conditions leading to Dana's adjudication as a deprived child as required by 10 Okla.Stat.1981, § 1130(A)(3). This issue was not raised in her motion to vacate. Given the lapse of the six month period in which to challenge termination of parental rights by default set forth in 10 Okla.Stat. 1981, § 1131, this issue need not be considered unless 10 Okla.Stat.1981, § 1130(A)(3) can be read as guaranteeing a 3-month grace period termination actions based on abandonment.[5] If § 1130(A)(3) allows termination of parental rights in this case only when the 3-month period has expired, then the trial court clearly exceeded its authority and the order terminating parental rights is void.

■■■ We do not believe 10 Okla.Stat. 1981, § 1130(A)(3) can be construed to so limit the authority of the trial court. When construing statutes, all relevant provisions must be considered together, where possible, so that force and meaning is given to each. *Earnest, Inc. v. LeGrand,* 621 P.2d 1148 (Okl.1980). 10 Okla.Stat.1981, § 1101(d) defines a "deprived child" as being one who is "for any reason destitute, homeless or abandoned, or who has not had the proper parental care or guardianship ..." 10 Okla.Stat.1981, § 1130(A)(2)[6] which does not require a 3-month waiting period, allows termination of parental rights for abandonment. Reading these provisions together, it is clear that a finding that a child is "deprived" on grounds of abandonment does not require that three months elapse before parental rights may be terminated. Such a construction would lead to the rather ludicrous result that a termination action against a parent who had abandoned a child would never be final

until three months after the parent returned to the child. If the parent never returned, the order would never be final. The trial court has not clearly exceeded its statutory authority. We note that abandonment was a material allegation in the petition sustained by the trial court. It (abandonment) was equally the basis for the order of deprivation, denial of the 3-month grace period and termination rights.

We find no fundamental error.

AFFIRMED.

IRWIN, C.J., BARNES, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and WILSON, JJ., concur.

OPALA, J., dissents.

5. A 3-month grace applies only when the parent[s] appear to contest.

6. 10 Okla.Stat.1981, § 1130(A) provides in part:
"A. The finding that a child is delinquent, in need of supervision or deprived shall not deprive the parents of the child of their parental rights, but a court may terminate the rights of a parent to a child in the following situations:
1. ..."

2. A finding that a parent who is entitled to custody of the child has abandoned it; or
3. A finding that the child is deprived, as defined in this chapter, and that such condition is caused by or contributed to by acts or admissions of his parent and that termination of parental rights is in the best interests of the child, and that the parent has failed to show that the condition which led to the making of said finding has not been corrected although the parent has been given three (3) months to correct the condition ..."