2010 OK CIV APP 137

**UROLOGY CENTER OF SOUTHERN OKLAHOMA, Petitioner/Appellant,**

v.

**Heidi MILLER and the Workers' Compensation Court, Respondents/Appellees.**

**No. 108,136.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 29, 2010.

Certiorari Denied Nov. 22, 2010.

C. Scott Beuch, C. Scott Beuch and Associates, Oklahoma City, OK, for Petitioner.

Nicole Bell, The Bell Law Firm, Norman, OK, for Respondents.

JERRY L. GOODMAN, Judge:

¶ 1 Employer Urology Center of Southern Oklahoma seeks review of a three-judge panel's order affirming a trial court order awarding benefits to Claimant Heidi Miller. Claimant gave Employer two weeks notice of the date on which she would voluntarily terminate her employment. She was injured on the job the day before the final day of employment. After being on temporary total disability, she was released for light duty. However, Employer did not offer her light duty employment because she was no longer an employee. Employer continued to pay temporary total disability benefits and was later denied reimbursement of some of those benefits. Based on our review of the facts and applicable law, we sustain the three-judge panel's order.

## FACTS

¶ 2 Claimant sought compensation for a single-event back injury she sustained while working for Employer. She was hurt placing towels in a cupboard. It was her next-to-last day of work, having previously given Employer a two-week notice of her intent to terminate her employment the next day.

¶ 3 Following her injury, she was examined in the emergency room, prescribed pain medication, later treated by a chiropractor, and even later, by an orthopedic physician. She was given various pain blocking injections in her back, underwent a discogram and CT scan, and was treated by physical therapy. Surgery was recommended by one physician; a second physician disagreed that surgery

was required. Instead of surgery, injections to her back were continued.

¶ 4 Before she reached maximum medical improvement, she was released to return to work with lifting restrictions. At that time, she was unemployed and no longer working for Employer pursuant to the two week notice she had previously given. Employer did not offer her a light duty position because she no longer worked for them. In fact, Employer had a light duty position which would have been offered to Claimant had she still been employed.

¶ 5 Claimant received temporary total disability (TTD) benefits until she was released from a physician's care. She continues to experience back pain. Claimant also testified she has symptoms of depression: crying, anger, and sadness. She testified she was provided an antidepressant, Paxil, by her gynecologist before the accident; however, she had stopped taking it by the time of trial. She testified she was not as depressed before the accident as afterwards, and would still take Paxil if she could afford it.

¶ 6 Claimant sought permanent partial disability (PPD) benefits for a back injury with psychological overlay and continued medical care.

¶ 7 At trial, Employer stipulated Claimant sustained an employment-related injury, but denied she experienced psychological overlay. Employer also sought repayment or credit for the TTD benefits it paid Claimant following her release for light duty work.

¶ 8 Claimant submitted the chiropractor's expert medical report regarding the psychological overlay claim. Employer objected because it:

> [D]oesn't have any history of the previous existing symptoms and medication that this woman had been taking. Therefore, it doesn't have any relevance to these proceedings. As to the remainder of the report, I don't have any objection to that.

¶ 9 Following the November 12, 2009, hearing, the trial court entered the following order, filed November 20, 2009, stating, in relevant part:

> THAT on MAY 28, 2008, ... claimant sustained accidental personal injury to the BACK with resulting PSYCHOLOGICAL OVERLAY (**aggravation of a pre-existing condition**)....
>
> –3–
>
> [ ] claimant was paid temporary total disability from JUNE 1, 2008 to APRIL 20, 2009.
>
> –4–
>
> THAT respondent's request for credit for overpayment of temporary total disability compensation from NOVEMBER 12, 2008 to APRIL 20, 2009 is DENIED.

The order then awarded Claimant 24 percent PPD to the back and two percent PPD for psychological overlay (over and above a five percent pre-existing disability).

¶ 10 On November 24, 2009, Employer sought review by a three-judge panel, preserving the issues now before us on appeal. In an order filed March 5, 2010, the panel reviewed the trial court's order for error, found it not to be against the clear weight of the evidence, and affirmed the order. Employer seeks our review.

## STANDARD OF REVIEW

¶ 11 While the three-judge panel's review of the trial judge's findings is governed by the clear-weight-of-the-evidence test (85 O.S.2001 § 3.6(A)), when re-examining the panel's factual resolutions this court applies the any-competent-evidence standard. *Bama Pie Ltd. v. Raes*, 1995 OK 122, ¶ 5, 905 P.2d 811, 813; *Owings v. Pool Well Serv.*, 1992 OK 159, ¶ 6, 843 P.2d 380, 382–383; *Lacy v. Schlumberger Well Serv.*, 1992 OK 54, ¶ 7, 839 P.2d 157, 160; *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶ 12, 684 P.2d 548, 552. If supported by competent evidence, the panel's findings on non-jurisdictional issues may not be disturbed on review.

¶ 12 *Huffman v. General Motors Corp.*, 1991 OK CIV APP 17, 811 P.2d 106, citing *Parks*, notes that the trial judge's decision, once altered by the three-judge panel's reexamination, loses its viability and stands replaced by the decision which altered it. The panel's decision then becomes the order in the case and the only one reviewable by

this court. So long as the three-judge panel notes the trial judge's order is against the clear weight of the evidence we are powerless to determine whether the three-judge panel appropriately followed its statutorily mandated standard of review.

¶ 13 When interpreting questions of law, however, we apply a *de novo* standard of review. *Neil Acquisition v. Wingrod Investment Corporation,* 1996 OK 125, ¶ 5, 932 P.2d 1100, 1103.

## ANALYSIS

### I. Overpayment of TTD

¶ 14 Employer argues it is entitled to recover TTD benefits it overpaid from November 12, 2008, the date a physician released Claimant for light duty work with a ten-pound lifting limit, through April 16, 2009, the date another physician concluded Claimant had reached maximum medical improvement and released her from further medical treatment. According to Employer, this is so because Claimant did not accept the light duty work available for her because she had voluntarily terminated her employment, thus in effect declining the light duty work. Employer concedes it did not offer her light duty work, because it had no duty to make such an offer to a former employee.

¶ 15 Claimant contends the continued TTD payments were proper because Employer did not follow the statutory procedure to terminate benefits. Because light duty work was available but not offered, Employer cannot terminate her benefits and therefore, Claimant was entitled to TTD benefits until completely released from treatment on April 16, 2009.

¶ 16 Both the trial court and the three-judge panel apparently agreed with Claimant and held Employer was not entitled to recover the TTD benefits it paid.

### II. Eligibility For Benefits Does Not Depend On Employment Status

¶ 17 We begin our analysis by reviewing the Oklahoma Supreme Court decision in *Pierce v. Franklin Elec. Co.,* 1987 OK 34, 737 P.2d 921. In *Pierce,* the employer terminat-

ed the employee due to excessive absences because the employee, who was receiving TTD benefits, was physically unable to perform the work required. The *Pierce* Court held that termination for this reason was permissible and did not subject the employer to a claim of retaliatory discharge pursuant to 85 O.S.1981, § 5. Relevant to our analysis, however, is the following language wherein the Court held:

> An employee who is discharged during a period of temporary disability does not lose the compensation benefits to which he is otherwise entitled. *The Act does not suggest that termination would relieve an employer of responsibility for the employee's medical care and disability payments. Similarly, rehabilitation does not depend on employment status.* . . . .

*Id.* at ¶ 12, at 924 (footnotes omitted, emphasis added) (superseded by statute as stated in *Upton v. State ex rel. Department of Corrections,* 2000 OK 46, 9 P.3d 84).

¶ 18 Further,

> Absent very limited circumstances, none of which apply here, the Workers' Compensation Act, 85 O.S.2001 § 11, mandates that employers subject to the act "shall pay" compensation to an employee for an accidental on-the-job injury.

*B.E. & K. Construction v. Abbott,* 2002 OK 75, ¶ 17, 59 P.3d 38, 44 (footnotes omitted).

¶ 19 Moreover, 85 O.S.2001, and Supp. 2010, § 14(A)(2) provides a very specific procedure to be followed when an employer seeks to stop paying TTD benefits once an injured employee has been released for light duty work. That section states, in relevant part:

> If the employee is capable of returning to modified light duty work, the treating physician shall promptly notify the employee and the employer or the employer's insurer thereof in writing and shall also specify what restrictions, if any, must be followed by the employer in order to return the employee to work. In the event the treating physician provides such notification to the employer's insurer, the insurer shall promptly notify the employer. *If an injured employee, only partially dis-*

*abled, refuses employment consistent with any restrictions* ordered by the treating physician, the employee shall not be entitled to temporary benefits during the continuance of such refusal unless in the opinion of the treating physician such refusal was justifiable; *provided, before compensation may be denied, the employee shall be served with a notice setting forth the consequences of the refusal of employment and that temporary benefits will be discontinued fifteen (15) days after the date of such notice....*

(Emphasis added)

■ ¶ 20 Our analysis thus proceeds from this proposition: once proven to be entitled to receive TTD benefits, an employer's subsequent termination (or recoupment) of those benefits can only done by following the prescribed statutory procedure, *i.e.*, absent an employee's outright refusal to work, an employer must first offer the employee light duty work and give notice to the employee that failure to accept the light duty work may cause termination of TTD benefits.

¶ 21 The next question to be answered, is one now posed by Employer: Can it terminate TTD payments (or recoup payments already made) to a former employee who voluntarily terminated her employment before being released for light duty work, when the Employer has light duty work available, but does not offer it to the former employee because she has previously terminated her employment? Under the specific and unique facts of this case, we hold it cannot recover those payments because Employer failed to follow the statutory procedure for terminating those payments.

### III. Conflicting Historical Decisions

¶ 22 The Court of Civil Appeals (COCA) and the Oklahoma Supreme Court have previously addressed similar but not identical issues, resulting in what appear to be a number of contradictory cases.

¶ 23 In 1998, COCA decided *Hinton v. Labor Source,* 1998 OK CIV APP 2, 953 P.2d 358, which held:

an employer must inform an employee of the availability of light duty work in order to defend against responsibility for paying temporary total disability.

. . .

This statute does not shift the burden to an employee to prove a negative, that there was no light duty available to him. *Id.* at ¶¶ 1, 10, at 358–359. Thus, an injured employee, released for light duty work, may continue to receive TTD benefits if there is no light duty work available, or if light duty work is available, but not offered.

¶ 24 Later, in 1998, COCA issued *Akers v. Seaboard Farms,* 1998 OK CIV APP 169, 972 P.2d 885, which held an injured employee, who had returned to work under light duty restrictions, but thereafter failed a post-injury drug test for which he was terminated, had no right to receive continued TTD benefits. Employee's valid termination for cause was deemed to be his refusal of the offered light duty work. COCA concluded by stating:

[ ] There is nothing in our law which compels an employer to continue offering light duty, or for that matter, any type of work, to employees who violate the employer's policies....

*Id.* at ¶ 10, at 887.

¶ 25 Further,

Contrary to Claimant's assertions, his own actions were effectively a refusal to continue accepting the light duty provided by Employer. The purpose of the Workers' Compensation Act is not to indemnify employees for injuries suffered on the job, but to compensate for loss of earning power and the ability to work when those losses are causally related to employment. *Roberts v. Matrix Services, Inc.,* 1993 OK 148, 863 P.2d 1242. Claimant's loss of earning power did not result from his impairment, rather it was caused by Claimant's loss of employment as a result of his own conduct.

*Id.* at ¶ 12, at 888.

¶ 26 Next, in 2001, COCA issued *Tubbs v. Oklahoma Tax Comm'n,* 2001 OK CIV APP 97, 28 P.3d 624. The employee was receiving TTD benefits when he was released for light duty. No light duty was available and none was offered; therefore, he continued to re-

ceive TTD benefits. When he "resigned" his employment, COCA held the employer was entitled to recover all TTD payments made after the employee resigned. *Tubbs* concluded by stating:

> The issue then is what effect does Claimant's resignation have on his right to receive temporary total disability benefits. If Claimant was still TTD his resignation would have no effect on his right to continue receiving benefits during his healing period. However, because there was competent evidence that Claimant was fit for light duty, *i.e.*, no longer TTD, his resignation effectively ended his right to TTD benefits. This Court in *Akers*, supra, held that an employer cannot be compelled to offer light duty work to an ex-employee. Otherwise, the claimant would be in a better position than uninjured employees who are terminated (or resign) for similar reasons. *Akers*, supra, at 887. The requirement to offer light duty work to injured employees simply does not extend to former employees.

*Id.* at ¶ 5, at 625.[1]

¶ 27 Then, in 2004, COCA issued *Smith v. Millwood Schools*, 2004 OK CIV APP 41, 90 P.3d 564. Smith was a school teacher who was injured and began receiving TTD benefits pursuant to her one-year teaching contract with the employer. The contract expired and was not renewed. After the expiration of her contract, she was released for light duty. The employer stopped paying TTD benefits because the claimant was no longer an employee, contending it was not obligated to offer her light duty work. *Smith* held the obligation to offer light duty work, set out in *Hinton* and *Tubbs*, does not extend to "former employees." *Smith* at ¶ 6, at 566.

¶ 28 Also in 2004, the Oklahoma Supreme Court issued *Patterson v. Sue Estell Truck-ing Co. Inc.*, 2004 OK 66, 95 P.3d 1087, wherein it was held:

> There is no provision in the workers' compensation statutes for denying temporary total disability because the employee was fired after his injury. *Two recent decisions [Pierce, supra and B.E. & K., supra] by this Court have recognized that continued employment is not a statutory requirement for eligibility for workers' compensation benefits.*

*Id.* at ¶ 8, at 1088.

¶ 29 Patterson was injured when his dump truck overturned. He was cited for driving recklessly and with a suspended license. He was subsequently fired from employment because he could not drive a truck without a license. The Court held he was nevertheless entitled to TTD benefits, as set out above.

¶ 30 In 2005, COCA issued *AmeriResource Group, Inc., v. Alexander*, 2005 OK CIV APP 68, 120 P.3d 901, which involved an employee who was receiving TTD benefits but was later terminated during the TTD period. COCA held that the employer had no duty to offer light duty work because no employer-employee relationship existed when the employee became capable of light duty work. *Id.* at ¶¶ 12, 13, at 903.

¶ 31 Yet, in 2006, COCA decided *Ford Motor Co. v. Moore*, 2006 OK CIV APP 108, 143 P.3d 223, in which the injured employee, while he was receiving TTD benefits, received disability retirement which terminated his employment. While TTD, the employer's expert medical witness stated employee was no longer TTD because of his retirement and could therefore be released for light duty work. The employer therefore sought to terminate the TTD benefits. The *Moore* court rejected this:

> Employer claims because Dr. Rodgers' report released Claimant for light duty work on May 10, 2005, there was no medical evidence that Claimant continued to be

---

1. We note *Akers* held no duty was owed to "employees who violate the employer's policies." *Id.* at ¶ 10, at 887. *Tubbs* quotes *Akers* as holding there is no duty "to offer light duty work to an ex-employee." We think there is a significant difference between a former employee who is terminated for cause (*Akers*) and one who voluntarily resigns (*Tubbs*). This distinction is not observed in *Tubbs* or those cases citing it. *See B.E. & K. Construction v. Abbott*, 2002 OK 75, ¶ 9, 59 P.3d 38, 41; *Smith v. Millwood Schools*, 2004 OK CIV APP 41, ¶ 9, 90 P.3d 564, 566; *AmeriResource Group, Inc. v. Alexander*, 2005 OK CIV APP 68, ¶ 12, 120 P.3d 901, 903; and *Ford Motor Company v. Moore*, 2006 OK CIV APP 108, ¶ 6, 143 P.3d 223, 225.

TTD. The Panel rejected this argument. It found Dr. Rodgers' report misunderstood Oklahoma Law as it was premised on the incorrect assumption that Claimant was not TTD simply because he retired and no longer has a job. The Panel explained "[i]t has long been recognized in Oklahoma that retired persons are entitled to temporary total disability benefits." We agree with the Panel's conclusion. TTD status is determined based on earning capacity and not actual loss of a job and "continued employment is not a statutory requirement for eligibility for workers' compensation benefits." *Patterson v. Sue Estell Trucking Co.*, 2004 OK 66, ¶ 8, 95 P.3d 1087, 1088. Thus, it is irrelevant that Dr. Rodgers mistakenly released Claimant for light duty work simply because he retired from his employment with Employer. Due to Claimant's disability retirement, light duty work was not an option.

Employer's second assignment of error contends because there was no longer an employer-employee relationship when Dr. Rodgers released Claimant for light duty, Employer was not legally obligated to offer Claimant light duty to terminate Claimant's TTD benefits. Employer relies upon *Tubbs v. Oklahoma Tax Com'n*, 2001 OK CIV APP 97, 28 P.3d 624; *Smith v. Millwood Schools*, 2004 OK CIV APP 41, 90 P.3d 564; and *AmeriResource Group, Inc. v. Alexander*, 2005 OK CIV APP 68, 120 P.3d 901. These cases hold where there is no longer an employer-employee relationship at the time the employee is found capable of light duties, an employer is not legally obliged to offer that work before seeking to terminate TTD benefits. These cases are factually distinguishable from the instant case. *Here, the Claimant did not quit or lose his job due to non-renewal of contract. He simply accepted an employer provided disability retirement benefit.* We refuse to penalize Claimant by terminating his TTD benefits simply because he took steps to assure his financial security. *Id.* at ¶¶ 5, 6, at 225 (emphasis added).

¶ 32 Analyzing the above cases and their relevance to the facts in our case, we can distinguish *Akers* and *AmeriResource* for the reason that Claimant was not terminated for cause, as in those cases.

¶ 33 *Smith* and *Tubbs* appear to lend support to Employer's argument that it need not offer light duty work to former employees who have not been terminated for cause, but whose employment contract has expired or who have resigned their job. Certainly this seems to be a common sense resolution.

¶ 34 However, those cases appear to conflict with *Pierce, B.E., & K.*, and *Patterson*, all of which hold that an employer-employee relationship is not a prerequisite to continued receipt of TTD benefits, and that despite being terminated by the employer for excessive absences (*Pierce*), voluntary reduction in force (*B.E. & K*), or for cause (*Patterson*), a former employee may continue to receive benefits. Finally, *Ford* holds that voluntary acceptance of an employer-provided retirement offer does not provide a basis to terminate TTD to a former employee.

¶ 35 In this case Claimant voluntarily terminated her employment for reasons of her own. She did not retire from such employment nor was she terminated for cause. Moreover, she gave timely notice of her intent to terminate her employment, before her injury occurred on the day before the date of termination given in her previous notice. There is no dispute that when Claimant was released for light duty work, no employment relationship existed. On that single basis alone, *Tubbs* and *Smith* would suggest TTD be denied while *Patterson, Pierce, B.E. & K*, and *Ford* would hold to the contrary.

¶ 36 Moreover, the holdings in *Tubbs, Smith, AmeriResource*, and to some degree, *Akers*, all deny benefits based on the fact that no employer-employee relationship existed at the time the employee became released for light duty. Yet, as held in *Pierce, B.E. & K, Patterson*, and *Ford*, the existence of an employer-employee relationship is not required for TTD benefits to continue.

¶ 37 We are unable to reconcile those cases which deny benefits based on no employer-employee relationship due to termination for cause (*Akers* and *AmeriResource*), expiration of contract (*Smith*) or resignation (*Tubbs*) with those cases awarding benefits

despite a lack of an employer-employee relationship when that relationship had been ended due to excessive absences (*Pierce*), inability to drive because of no drivers license (*Patterson*), voluntary inclusion in reduction in force plan (*B.E. & K.*) or early retirement due to disability (*Ford*)[2]

¶ 38 While it is counter-intuitive to offer a light duty job to a person no longer employed because of that person's voluntary decision to terminate her employment, we nevertheless conclude that § 11 provides very specific procedures for terminating TTD benefits. Had Employer followed those procedures, it would have eliminated any questions concerning entitlement to TTD benefits. Those procedures should have been strictly followed by Employer and because they were not, Employer cannot recoup those TTD benefits paid after Claimant was released for light duty. As set out in *Patterson*,

> The Worker's Compensation Act is in derogation of the common law and those statutes are the exclusive provisions governing benefits. Workers' eligibility for benefits, limitations on benefits, and circumstances which will cause those benefits to cease have been determined by our legislature. We may not employ rules of common law or equity to change those provisions. *See Brooks v. A.A. Davis & Co., et al,* 1926 OK 965 [124 Okla. 140], 124 [254] P. 66.

*Patterson,* 2004 OK at ¶ 6, 95 P.3d at 1088.

¶ 39 Section 11 compels an employer to pay benefits, except for four enumerated reasons: willful injury to himself or others, willful failure to use safeguards, injury due to use or abuse of alcohol, illegal drugs or chemicals, or participants in horseplay. The Legislature has not chosen to create an exemption which would apply to these facts.

¶ 40 Further, § 14 clearly requires an employer to give an injured employee notice of the availability of light duty work in order to lay a predicate for future termination of TTD benefits. This was not done.

¶ 41 Based on this analysis, we hold Employer was not entitled to recoup the TTD paid to Claimant simply because Claimant is no longer employed by Employer. Rather, because Employer did not follow the statutory procedure for terminating TTD benefits, it cannot recover those benefits when paid.

¶ 42 Until the Legislature sees fit to craft an additional method by which TTD benefits can be ended when, as here, an employee voluntarily leaves employment, we are compelled to follow the strict mandate of § 11.

¶ 43 We conclude no legal error occurred.

*IV. Psychological Overlay*

¶ 44 Employer's second asserted error is that the award for psychological overlay was unsupported by probative evidence. However, the stated objection was for lack of relevance due to a lack of "history of the previous existing symptoms and medication that this woman had been taking."

¶ 45 We note Claimant's expert medical witnesses' report noted that after consulting with Claimant, administering a "Zung Depression Test" and a review of her records, he opined she was 15 percent PPD due to psychological overlay.

¶ 46 Employer's expert noted historical episodes of depression but opined any depression she had was preexisting and not related to her work-related injury. He rated her at zero percent PPD for psychological overlay.

¶ 47 The trial court awarded two percent. This is within the range of evidence and is supported by competent evidence. We find no error. The panel's order is sustained.

¶ 48 **SUSTAINED.**

GABBARD, P.J., concurs.

RAPP, J., not participating.

---

2. Though the issue presented was whether claimant was an independent contractor, the Court in *Leonhardt Enterprises v. Houseman,* 1977 OK 51, 562 P.2d 515, held that an employee who voluntarily quit his job but was injured while attempting to collect his final check was eligible for benefits.