OSCN Found Document:OAKES v CITY OF STILLWATER and THE WORKERS COMPENSATION COMMISSION

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 OAKES v CITY OF STILLWATER and THE WORKERS COMPENSATION COMMISSION
2025 OK CIV APP 11
Case Number: 121948
Decided: 09/18/2024
Mandate Issued: 04/17/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2025 OK CIV APP 11, __ P.3d __

 

TRAVIS LEE OAKES, Petitioner,
vs.
CITY OF STILLWATER (OWN RISK) and THE WORKERS' COMPENSATION COMMISSION, Respondents.

APPEAL FROM THE WORKERS' COMPENSATION COMMISSION

SUSTAINED

Daniel J. Talbot TALBOT LAW GROUP Oklahoma City, Oklahoma For Petitioner

R. Dean Lott John Valentine LOTT & VALENTINE Edmond, Oklahoma For Respondent

DEBORAH B. BARNES, CHIEF JUDGE:

¶1 Travis Lee Oakes (Claimant) seeks review of an order of the Oklahoma Workers' Compensation Commission. The Commission reversed an order of an administrative law judge (ALJ) on the issue of temporary total disability (TTD) benefits. The Commission found the ALJ erred in denying the City of Stillwater's motion to terminate TTD benefits. The Commission found that because Claimant -- who had previously resigned his employment with the City in order to work for a different employer out of state -- was released to light duty work, 

BACKGROUND

¶2 The parties agree that Claimant sustained a compensable injury to his left knee as a result of an accident on June 17, 2021, arising out of and in the course of his employment with the City. Claimant testified at trial that, at the time of the accident, he had been working for the City for almost ten years. He stated that he started out as an electrical journeyman lineworker for the City and, by the time of the accident, was a crew chief. He testified that the injury occurred when he stepped off a forklift and into a pothole and felt a pop in his knee. Claimant was provided medical treatment and, in December of 2022, timely filed a claim for compensation.

¶3 The parties further agree that in October 2021 Claimant voluntarily resigned from his employment with the City to take a higher paying job in California. Claimant testified at trial that, prior to resigning, he underwent arthroscopic knee surgery in August 2021 and was placed on some "light-duty computer work" for the City until he was released back to "full duty" on October 5, 2021.

¶4 On October 11, 2021, Claimant submitted his notice of voluntary termination, stating his last day of employment with the City would be October 21, 2021. At trial, Claimant responded in the affirmative when questioned whether he "took a job as a journeyman lineman with the International Brotherhood of Electrical Workers in California to pay substantially more than the City[.]"

¶5 Although Claimant took the job in California, he visited Oklahoma in May and July of 2022 in order to receive medical treatment in connection with his June 2021 injury. 

¶6 As above stated, Claimant was still on "full-duty release" at this time -- i.e., he had no work restrictions related to his on-the-job injury. However, Claimant responded in the affirmative when questioned whether, in August 2022, his treating doctor changed his restrictions to "sit-down work only[.]" Moreover, Claimant had a partial knee replacement surgery in September 2022. Claimant testified he did not have a good result from that surgery and testified he has had continued problems with his knee. Among other things, he described his left leg as being "half the size of . . . [his] right leg" because "[t]he muscle hasn't come back."

¶7 Claimant testified that, since returning to Oklahoma from California, he has applied to work for the City and "[n]owhere else." He responded in the affirmative when questioned whether he "had to quit [his] job in California because of [his] [work-related] injuries [in Oklahoma] and to come back [to Oklahoma] and get medical treatment[.]"

¶8 In a Physician's Report on Release and Restrictions, dated February 23, 2023, Claimant was released for work with temporary restrictions of no crawling, kneeling, squatting or climbing. The City subsequently filed a motion to terminate TTD benefits based on this light-duty release to work.

¶9 In the ALJ's order filed in March 2023, it found that "Claimant sustained an accidental personal injury to his left knee on June 17, 2021, which arose in the course and scope of his employment with [the City]." The ALJ further found, with regard to TTD benefits, as follows:

It is undisputed that Claimant was not offered a light duty position. Since no job offer was made to Claimant, he is entitled to continue to receive [TTD] benefits. It is incumbent upon [the City] to follow the statutory mandate and offer Claimant a light duty position in order to avoid payment of [TTD] benefits while Claimant is on light duty restrictions.

¶10 The City appealed the ALJ's decision to the Commission. In its Request for Review, it asserted:

The evidence adduced at trial shows [Claimant] voluntarily resigned his position to take a job in California where he worked for a subsequent employer, which [Claimant] testified provided better pay and benefits. [Claimant] voluntarily resigned his position with the City . . . in October of 2021. [Claimant] worked for the subsequent employer in California from October of 2021, until he moved back to Oklahoma in July of 2022. For a period of nine months, [Claimant] lived out-of-state and worked for a subsequent employer . . . .

After [Claimant] returned to Oklahoma, he received additional medical treatment, to include surgery . . . . [Claimant] received TTD benefits following the surgical procedure and [his treating physician] released [Claimant to] light duty on January 16, 2023. [Claimant] requested a change of physician and . . . [a new doctor was appointed] as the treating physician. [The new physician] released [Claimant] to light duty restrictions in his report of February 23, 2023. [The City] filed a motion to terminate TTD benefits based upon [that] light duty release, and [Claimant's] voluntary resignation in October of 2021. [Claimant's] voluntary resignation 14 months prior to the light duty release effectively ended [Claimant's] right to TTD benefits while he is considered to be on light duty. An employer cannot be compelled to offer light duty work to an ex-employee. The requirement to offer light duty work to injured employees simply does not extend to employees who voluntarily resign. Therefore, [the City's] motion to terminate TTD benefits based upon the light duty release [in February 2023] should have been sustained.

¶11 The Commission agreed with the City, stating in its order filed in January 2024 that while "an employer may have a continued legal obligation to pay TTD even after the employee's resignation or termination," "[a]n employer does not have a legal obligation to offer light duty work to an employee that has voluntarily quit . . . and has no obligation to pay TTD to said employee once they have been medically released to light duty work." The Commission stated: "[I]t is undisputed Claimant voluntarily resigned his employment with [the City] after accepting a different job with additional pay and benefits. Thus, the [City] had no obligation to offer light duty work, or otherwise reestablish an employer-employee relationship with Claimant, upon his release to light duty work." Consequently, the Commission vacated that portion of the ALJ's order denying the City's motion to terminate TTD benefits, and it remanded the matter to the ALJ for entry of an order terminating TTD benefits and reserving any issue of overpayment. The Commission otherwise affirmed the ALJ's order, including the finding that Claimant sustained a compensable injury to his left knee on June 17, 2021.

¶12 From that portion of the Commission's order pertaining to the City's motion to terminate TTD benefits, Claimant seeks review.

STANDARD OF REVIEW

¶13 Title 85A O.S. 2021 & Supp. 2019 § 78(C) of the Administrative Workers' Compensation Act (AWCA) 

The Supreme Court may modify, reverse, remand for rehearing, or set aside the judgment or award only if it was:

1. In violation of constitutional provisions;

2. In excess of the statutory authority or jurisdiction of the Commission;

3. Made on unlawful procedure;

4. Affected by other error of law;

5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;

6. Arbitrary or capricious;

7. Procured by fraud; or

8. Missing findings of fact on issues essential to the decision. 

The present controversy concerns the proper interpretation of statutory language and, therefore, presents the question of whether the Commission's order is affected by an error of law. "Questions of law are reviewable by a de novo standard. Under this standard, we have plenary, independent and non-deferential authority to determine whether the trial court erred in its legal rulings." Am. Airlines v. Hervey, 2001 OK 7433 P.3d 47

¶14 In addition, the issue raised by Claimant of whether essential findings are in fact missing from the Commission's order also presents a question of law. Gillispie v. Estes Exp. Lines, Inc., 2015 OK CIV APP 93361 P.3d 543

ANALYSIS

¶15 Claimant argues the Commission "failed to abide by the plain language of the AWCA and failed to strictly construe the provisions of the AWCA related to TTD and light duty." Claimant also argues the Commission misapplied the relevant case law. Claimant asserts a plain reading of the pertinent statutes reveals that he "is entitled to TTD even though he previously resigned his position with [the City]." This is so, according to Claimant, because although he had previously resigned, and although he was released for light-duty work at the time the City sought to terminate TTD benefits, "alternative work was not offered by [the City]." 

I. The Obligation to Offer Alternative Work to a Former Employee

A. The Text of the AWCA

¶16 "In construing a statute, our goal is to determine the Oklahoma Legislature's intent." Sierra Club v. State ex rel. Okla. Tax Comm'n, 2017 OK 83405 P.3d 691Hall v. Galmor, 2018 OK 59427 P.3d 1052

¶17 Title 85A O.S. 2021 & Supp. 2019 § 45(A), entitled "Temporary Total Disability," provides, in part, as follows:

If the injured employee is temporarily unable to perform his or her job or any alternative work offered by the employer, he or she shall be entitled to receive compensation equal to seventy percent (70%) of the injured employee's average weekly wage, but not to exceed the state average weekly wage, for one hundred fifty-six (156) weeks.

85A O.S. § 45

If the injured employee is temporarily unable to perform his or her job, but may perform alternative work offered by the employer, he or she shall be entitled to receive compensation equal to seventy percent (70%) of the difference between the injured employee's average weekly wage before the injury and his or her weekly wage for performing alternative work after the injury, but only if his or her weekly wage for performing the alternative work is less than the temporary total disability rate.

85A O.S. § 45

¶18 Claimant asserts that the plain language of these provisions, strictly construed, requires the City to have offered alternative work to Claimant prior to terminating TTD benefits. Claimant points out that 85A O.S. § 106Corbeil v. Emricks Van & Storage, Guarantee Ins., 2017 OK 71404 P.3d 856

[T]he rule of strict construction, as applied to statutes, does not mean that words shall be so restricted as not to have their full meaning, but merely means that everything shall be excluded from the operation of the statutes so construed which does not clearly come within the meaning of the language used.

Brown v. Claims Mgmt. Res. Inc., 2017 OK 13391 P.3d 111Am. Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, 2014 OK 95341 P.3d 56

¶19 The statutory language at issue in the present case involves the following key phrases: "If the injured employee is temporarily unable to perform his or her job or any alternative work offered by the employer," and "If the employee refuses to perform the alternative work offered by the [employer], he or she shall not be entitled to benefits[.]" The question arises in this case whether the Legislature intended for this language to apply to current and (at least a subset of) former employees, or only to current employees. To the extent the language is susceptible to either interpretation, a strict and narrow reading -- e.g., of the language directed toward employees "temporarily unable to perform [their] job or any alternative work offered by the employer" -- would appear to limit application to current employees, i.e., those with an existing employee-employer relationship with the employer. Narrowly construed, and excluding everything from the operation of the statute that does not clearly come within the meaning of the language used, it is reasonable to view the language at issue as limited to an employee who is actually in a position to "refuse[] to perform the alternative work offered by the [employer]" -- i.e., who need not also first be rehired by the (former) employer prior to performing or refusing to perform such alternative work. Only a broader construction of these isolated provisions could result in an interpretation that forces a former employer into the dilemma of either (1) offering to rehire the former employee, or (2) continuing to pay TTD benefits to the former employee who is no longer temporarily totally disabled. 

¶20 However, even a strict construction requires this Court to (strictly) construe all pertinent provisions of a statute. "[W]e look not just at the text of the provision at issue, but also at the text of related provisions in the same statute or legislative act, in a manner that achieves full force and effect for each provision." Hall, 2018 OK 59

B. The Case Law

¶21 The statutory analysis set forth above is generally consistent with the extant case law in Oklahoma on this subject: Oklahoma Court of Civil Appeals cases that, viewed as a whole, hold that under most, but not all, circumstances, an employer, prior to terminating TTD benefits, has no obligation to offer alternative work to a former employee released to light duty. None of these cases directly addresses the exact statutory language at issue in the present case. However, because the statutory language at issue in this case is substantially similar to earlier versions, the interpretations set forth in the earlier cases remain relevant. Indeed, the Oklahoma Supreme Court has explained:

Legislative familiarity with extant judicial construction of statutes is presumed. Unless a contrary intent clearly appears or is plainly expressed, the terms of amendatory acts retaining the same or substantially similar language as the provisions formerly in force will be accorded the identical construction to that placed upon them by preexisting case law.

Special Indem. Fund v. Figgins, 1992 OK 59831 P.2d 1379See also Okla. Sup. Ct. R. 1.200(d)(2), 12 O.S. 2021 & Supp. 2024, ch. 15, app. 1 (providing that opinions released for publication by the Court of Civil Appeals "shall be considered to have persuasive effect").

¶22 In Urology Center of Southern Oklahoma v. Miller, 2010 OK CIV APP 137246 P.3d 736

If the employee is capable of returning to modified light duty work, the treating physician shall promptly notify the employee and the employer or the employer's insurer thereof in writing. In the event that the treating physician releases a claimant for light-duty work and provides written restrictions from normal work duties, and the employer makes a good-faith offer in writing to provide a light-duty position at the same rate of pay that the claimant was receiving at the time of the injury, and the claimant refuses to accept the light-duty assignment, the claimant is not entitled to temporary total disability; provided, before compensation may be denied, the employee shall be served with a notice setting forth the consequences of the refusal of employment and that temporary benefits will be discontinued fifteen (15) days after the date of such notice.

85 O.S. Supp. 2010 § 14Miller Court discussed at length several previous cases addressing even earlier versions of the statutory language, and treated those cases as confronting substantially similar provisions. Miller was decided, the Legislature enacted the Workers' Compensation Code in which the language at issue remained nearly identical to the language confronted by the Court in Miller. 

¶23 Thus, the earlier version and the current version both refer to the ability of the employee to "return[] to" (or "perform") "modified light duty" (or "alternative") work. The differences between the versions are not substantial such as might indicate a clear departure from interpretations in prior case law. Moreover, the earlier version stated:

In the event that the treating physician releases a claimant for light-duty work and provides written restrictions from normal work duties, and the employer makes a good-faith offer in writing to provide a light-duty position at the same rate of pay that the claimant was receiving at the time of the injury, and the claimant refuses to accept the light-duty assignment, the claimant is not entitled to temporary total disability[.]

The current version is somewhat more concise, stating that TTD is appropriate "[i]f the injured employee is temporarily unable to perform his or her job or any alternative work offered by the employer," and that "[i]f the employee refuses to perform the alternative work offered by the [employer], he or she shall not be entitled to benefits[.]" However, the differences here are also not substantial such as might indicate a clear departure from prior case law.

¶24 Turning to that case law, the conclusion was reached in several of the past cases that the employer was not obligated to offer light-duty work to its former employee. See, e.g., AmeriResource Grp., Inc. v. Alexander, 2005 OK CIV APP 68120 P.3d 901 Smith v. Millwood Schs., 2004 OK CIV APP 4190 P.3d 564Tubbs v. Okla. Tax Comm'n, 2001 OK CIV APP 9728 P.3d 624Akers v. Seaboard Farms, 1998 OK CIV APP 169972 P.2d 885

¶25 In AmeriResource Group, another Division of this Court explained:

Generally, in order to avoid paying TTD benefits to an injured worker capable of light duties, it is the employer's burden to advise the employee that such work is available. Also, as a general rule, if the employer has no light duty work available, the injured employee is nonetheless entitled to TTD benefits. However, the Court of Civil Appeals has also held that where, as here, there is no longer an employer-employee relationship at the time the employee is found capable of light duties, an employer is not legally obliged to offer that work.

2005 OK CIV APP 68Tubbs similarly stated that "[t]he requirement to offer light duty work to injured employees simply does not extend to former employees." 2001 OK CIV APP 97

¶26 Although these Courts have sometimes spoken in absolute terms -- stating, as in Tubbs, that the alternative work requirement "simply does not extend to former employees" -- the cases have nevertheless examined the reason for the discontinuation of the employment relationship. Indeed, in Akers, this Court's analysis reveals the importance of determining whether the employment is ended "for reasons unrelated to [a worker's] disability." Akers, ¶ 11, 972 P.2d at 887. In Akers, the employer fired the claimant after he was injured and while he was working for the employer with restrictions and in a light-duty capacity. The claimant argued that the employer must pay him TTD benefits from the time of termination because the termination was tantamount to a refusal to offer him light-duty work. However, because the claimant was fired for failing a drug test and for violating company policy, this Court explained: "There is nothing in our law which compels an employer to continue offering light duty, or for that matter, any type of work, to employees who violate the employer's policies." Id. ¶ 10, 972 P.2d at 887.

¶27 The importance of the details of the termination of the employer-employee relationship is also reflected in Miller. In Miller, this Court found in favor of the claimant despite the fact that the employment ended as a result of a voluntary decision to terminate on the part of the claimant. However, the claimant submitted her two-week notice prior to her injury -- i.e., only upon her next-to-last day of work did the claimant sustain a single-event back injury. The Miller Court emphasized "the specific and unique facts of this case" which led to the Court reaching what it described as the "counter-intuitive" conclusion that the employer was required "to offer a light duty job to a person no longer employed because of that person's voluntary decision to terminate her employment[.]" Miller, 2010 OK CIV APP 137Miller was not aware of her (future) injury at the time she submitted her two-week notice to the employer; nevertheless, the injury occurred during the course of her employment and resulted in the claimant's inability to work.

¶28 Although Claimant argues that Miller supports his position on appeal, we view Miller as limited to what the Miller Court described as its "specific and unique facts" involving a voluntary resignation that was made prior to, and without knowledge of, the claimant's injury. Miller Court's analysis is that, generally, a claimant's voluntary decision to terminate the employer-employee relationship will result in the employer having no obligation to extend an offer of alternative work to its former employee when that former employee is released to work light duty. Indeed, as noted above, the Oklahoma Supreme Court has implied that, in circumstances in which an employee's resignation can be properly categorized as voluntary, an employer has no obligation to pay post-employment TTD benefits. See Abbott, 2002 OK 75see also City of Tulsa, 2017 OK CIV APP 1

¶29 Turning to the circumstances of the present case, it is undisputed that Claimant voluntarily resigned approximately four months after his injury. Indeed, Claimant was released to work full duty at the time of his resignation, and neither his injury nor his disability status was relevant to the severing of the employer-employee relationship. Claimant was clearly not discharged "for the sole reason of being absent from work or for the purpose of avoiding payment of temporary total disability benefits," nor did his employment even end "during a period of temporary total disability[.]" 85A O.S. 2021 § 7(E). Moreover, the unique chronology of events presented in Miller did not occur in the instant case. Our interpretation of the statute and the case law requires that we conclude the City had no obligation to extend an offer of alternative work to Claimant prior to terminating payment of TTD benefits upon Claimant's release to light-duty work in February 2023. Therefore, we sustain the Commission's decision finding that the ALJ erred in denying the City's motion to terminate TTD benefits.

II. Additional Arguments

¶30 Claimant makes the additional argument that the Commission's order is clearly erroneous in view of the evidence. Claimant points to evidence establishing that the City never made an offer of light-duty work; that Claimant never refused such an offer; and that the City did not have light-duty work available for Claimant in any department that would not require climbing. These facts, however, are rendered irrelevant by our conclusion, above stated, that the City had no obligation to extend an offer of alternative work to Claimant. Therefore, we find that this argument lacks merit.

¶31 Claimant also argues that the Commission's order is arbitrary and capricious because "the Miller case is the only case whose facts and applicable law is almost identical to the case at hand." 

¶32 Finally, Claimant asserts the Commission's order is missing findings of fact on issues essential to the decision. In particular, Claimant asserts "the Commission fails to make any findings as to why they are not relying on the Miller decision[.]" Claimant quotes, in part, the following from Gillispie v. Estes Express Lines, Inc., 2015 OK CIV APP 93361 P.3d 543

It is fundamental that an absence of required findings is fatal to the validity of administrative decisions even if the record discloses evidence to support proper findings. Findings of an administrative agency acting in a quasi-judicial capacity should contain a recitation of basic or underlying facts drawn from the evidence sufficiently stated to enable the reviewing court to intelligently review the decision and ascertain if the facts upon which the order is based create a reasonable basis for the order.

Gillispie, ¶ 17, 361 P.3d at 549 (quoting Jackson v. Indep. Sch. Dist. No. 16 of Payne Cnty., 1982 OK 74648 P.2d 26

¶33 However, a missing explanation as to why the Commission did not rely on the Miller decision does not equate to the absence of a "basic or underlying fact drawn from the evidence." 

CONCLUSION

¶34 We conclude the City had no obligation to extend an offer of alternative work to Claimant prior to terminating payment of TTD benefits upon Claimant's release to light-duty work in February 2023. Therefore, we sustain the Commission's order finding that the ALJ erred in denying the City's motion to terminate TTD benefits but otherwise affirming the ALJ's rulings.

¶35 SUSTAINED.

WISEMAN, P.J., and FISCHER, J., concur.

FOOTNOTES

AmeriResource Grp., Inc. v. Alexander, 2005 OK CIV APP 68120 P.3d 901

85A O.S. Supp. 2019 § 3Brown v. Claims Mgmt. Res. Inc., 2017 OK 13391 P.3d 111

employee, he or she shall not be entitled to benefits under subsection A of this section or under this section." (Emphasis added.) The City points out that Claimant's proposed strict and plain reading of the statute must give way, at least in part, because such a reading of § 45(B)(3) would result in the absurdity of interpreting the Legislature as specifying that an employee is not entitled to benefits if the employee refuses to perform work offered by the employee. As stated by the City: "If construed strictly, the employee would have to refuse to perform alternative work offered by him or herself." Answer Br. at 11. Claimant responds by stating that this "is obviously a typo or scrivener's error that was not caught by the Legislature. When read in conjunction with [other provisions], it is abundantly clear the Legislature meant for it to say 'offered by employer.'" Reply Br. at 7. We agree with the parties that § 45(B)(3) should be read as stating: "If the employee refuses to perform the alternative work offered by the [employer], he or she shall not be entitled to benefits under subsection A of this section or under this section."

85 O.S. Supp. 2005 § 1.1narrowing of its application, particularly with regard to the subset of claimants who no longer have an employer-employee relationship with the employer at the time the alternative work would be performed or refused.

American Airlines case, cited in Brown, involved circumstances outside the context of workers' compensation law in which the Supreme Court was tasked with interpreting statutory provisions to determine whether they exempted certain property from taxation. The American Airlines Court explained that "[s]tatutes exempting property from taxation are to be strictly construed against the claimant." 2014 OK 95

See Bodine v. L.A. King Corp., 1994 OK 22869 P.2d 320Tubbs v. Okla. Tax Comm'n, 2001 OK CIV APP 9728 P.3d 624See also Am. Airlines v. Hervey, 2001 OK 7433 P.3d 47or who is able to work, is not entitled to temporary total disability compensation." (emphasis added)).

Tulsa Cnty. Deputy Sheriff's Fraternal Ord. of Police, Lodge No. 188 v. Bd. of Cnty. Comm'rs of Tulsa Cnty., 2000 OK 2995 P.2d 1124

[S]tatutes will be interpreted in a manner which renders every word and sentence operative rather than in a manner which would render a specific statutory provision nugatory. TWA v. McKinley, 1988 OK 5749 P.2d 108Dana P. v. State, 1982 OK 140656 P.2d 253Eason Oil Co. v. Corporation Commission, 1975 OK 14535 P.2d 283

Bryan Cnty. Sheriff's Dep't v. Weatherly, 2000 OK CIV APP 352 P.3d 383Schiewe v. Cessna Aircraft Co., 2024 OK 19546 P.3d 234

Miller, the Legislature is deemed to be familiar with the Miller Court's analysis. Regardless, we note, briefly, that earlier versions contained the following language, as found, for example, in 85 O.S. Supp. 1996 § 14

If the employee is capable of returning to modified light duty work, the attending physician shall promptly notify the employee and the employer or the employer's insurer thereof in writing and shall also specify what restrictions, if any, must be followed by the employer in order to return the employee to work.

The similarity in the language -- "If the employee is capable of returning to modified light duty work" -- is clear.

within seven (7) days notify the employee and the employer or the employer's insurer thereof in writing." (Emphasis added.)

See generally Patterson v. Sue Estell Trucking Co. Inc., 2004 OK 6695 P.3d 1087B.E. & K. Const. v. Abbott, 2002 OK 7559 P.3d 38Abbott Court specified that "[s]ome courts find that where an employee's separation from employment is voluntary, workers' compensation benefits are not payable." Abbott, ¶ 12, 59 P.3d at 42. Although the Abbott Court, applying the Workers' Compensation Act, 85 O.S. 2001 §§ 1 et seq., did not expressly endorse this line of cases, its analysis implies that a truly voluntary resignation relieves the employer of the responsibility to pay TTD benefits. Although the Abbott Court found in favor of the claimant, it did so because the claimant's volunteering to be included in an employer-planned reduction in force was not equivalent to a voluntary resignation. Instead, the employer, in effect, ultimately made the decision to terminate. Citing Abbott, this Court in City of Tulsa v. Mayes, 2017 OK CIV APP 1387 P.3d 367City of Tulsa, ¶ 14, 387 P.3d at 371. However, the City in the present case has failed to raise the argument that it had no obligation to pay post-employment TTD benefits as a result of the voluntary resignation and argues only that it properly sought termination of benefits following the February 2023 release. Nevertheless, the reasoning in Abbott bolsters our analysis, as set forth below.

See supra note 15 and infra note 17.

Miller. The Miller Court states that earlier cases finding in favor of the employer, including Smith and Tubbs, "appear to conflict with [Oklahoma Supreme Court cases holding] that an employer-employee relationship is not a prerequisite to continued receipt of TTD benefits . . . ." Miller, ¶ 34, 246 P.3d at 742. See also id. ¶ 36, 246 P.3d at 742 (The Miller Court implies a conflict exists between Oklahoma Supreme Court cases holding "the existence of an employer-employee relationship is not required for TTD benefits to continue," and Court of Civil Appeals cases "deny[ing] benefits based on the fact that no employer-employee relationship existed at the time the employee became released for light duty."). However, those Oklahoma Supreme Court cases do not imply that a former employer must offer light-duty work when the former employee is, in essence, no longer temporarily totally disabled because the former employee has been released to work (with restrictions). Therefore, we disagree with the Miller Court regarding the existence of such a conflict in the case law. Indeed, if the Miller Court believed such a conflict truly existed, it would not have needed to limit its "counter-intuitive" holding to its "specific and unique facts[.]" Miller, ¶¶ 21 & 38, 246 P.3d at 740 & 743. Moreover, as noted above, the Oklahoma Supreme Court in Abbott implied that in circumstances in which the employee has voluntarily quit, an employer has no obligation to continue to pay TTD benefits, with the caveat that the resignation must actually be voluntary.

Miller decision has "persuasive effect" but does not constitute mandatory authority. Okla. Sup. Ct. R. 1.200(d)(2).

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105