**ALFALFA ELECTRIC COOPERATIVE, INC., a domestic corporation, Appellant,**

**v.**

**The FIRST NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, a banking corporation, Appellee.**

**No. 45751.**

Supreme Court of Oklahoma.

July 23, 1974.

Shutler, Baker, Simpson & Logsdon, Kingfisher, for appellant.

Harvey L. Harmon, Sr., Franklin, Harmon & Satterfield, Inc., Oklahoma City, for appellee, John R. McCandless, Oklahoma City, of counsel.

LAVENDER, Justice:

Alfalfa Electric Cooperative, Inc. brought this action under the declaratory judgment act. (12 O.S. § 1651 et seq.) It sought a determination as to whether actions of its manager and board of trustees in encumbering certain assets were in violation of 18 O.S. § 437.20 and, if so, then it sought further relief from The First National Bank and Trust Company of Oklahoma City for the return of the assets unencumbered. Final judgment was rendered in the trial court on a motion for summary judgment. That court incorporated prior orders rendered on motion for partial summary judgment by reference in that Journal Entry. Relief was denied Alfalfa Electric Cooperative. This appeal is from that judgment. Parties shall be identified as they appeared in the trial court with the plaintiff-in-error referred to as the plaintiff or cooperative and the defendant-in-error as the defendant or bank.

The plaintiff was incorporated under the Oklahoma Rural Electrification Act (18 O.S. § 437 et seq.). The defendant was a

banking institution. In the spring of 1970, the parties entered into a series of financial transactions also involving North Central Oklahoma Development Corporation, a non-profit Oklahoma corporation. Prior thereto, the cooperative had made loans to the development company as authorized by its board of trustees. The defendant bank made two loans for a total of $150,000.00 to the development company. These loans were secured by the cooperative giving to the bank collateral agreements pledging as security a $100,000.00 U.S. Treasury Bond, a $49,000.00 Certificate of Deposit issued by the defendant bank, a $90,000.00 Certificate of Deposit issued by the defendant bank, and four $15,000.00 (each) Certificates of Deposit issued by other banks, but all held in the name of the cooperative. Default occurred on the development company loans whereupon the bank sought to enforce its rights in the collateral. The cooperative brought this action. Temporary relief was allowed and subsequently vacated. The bank, both before the filing of this action and after the vacating of the temporary relief given to the cooperative, liquidated the collateral and applied the proceeds to the development company loan.

The transactions with the defendant bank were negotiated by John Hooper, who was both manager of the cooperative and president of the development company. He executed the documents for both the cooperative and the development company. His actions were subsequently approved by the board of trustees. The bank was so notified of this approval by letter. No approval was ever sought or given by the members of the cooperative.

The "Rural Electric Cooperative Act" at 18 O.S.1971 § 437.20 states:

"A cooperative may not sell, mortgage, lease or otherwise dispose of or encumber all or any substantial portion of its property unless such sale, mortgage, lease, or other disposition or encumbrance is authorized at a duly held meeting of the members thereof by the affirmative vote of not less than two-

thirds (⅔) of all the members of the cooperative, and unless the notice of such proposed sale, mortgage, lease, or other disposition or encumbrance shall have been contained in the notice of the meeting; * * *."

The cooperative argues this provision of the Act controls its transactions with the bank. All parties agree no such member approval was given. The trial court found the statute did not apply and gave summary judgment to the defendant bank.

We agree with the trial court's decision that the cited statute is not applicable to the transactions in this case.

This suit involves a section of the "Rural Electric Cooperative Act" not heretofore interpreted by this court. A most impressive line of cases has established the fundamental rule "to ascertain and give effect to the intention of the Legislature as expressed in the statute." The legislature in the act itself laid down the guide line as to construction for it provides:

"This Act shall be construed liberally." 18 O.S.1971 § 437.29. Bullington v. Lowe, 94 Okl. 234, 221 P. 502 (1923), defines "strict construction" as that which refuses to extend the law by implications or equitable considerations. See also Walker v. Dugger, Okl., 371 P.2d 910 (1962). Liberal construction is the opposite and allows extension of the law by implication.

A general rule is that all legislative enactments must be interpreted in accordance with their plain ordinary meaning according to the import of the language used. See Applications of Oklahoma Turnpike Authority, Okl., 277 P.2d 176 (1954); Loeffler v. Federal Supply Company, 187 Okl. 373, 102 P.2d 862 (1940).

The requirement for two-third member approval found in 18 O.S. § 437.20 is limited "[to] sell, mortgage, * * * or encumber all or any substantial portion of its property * * *." "All or any substantial portion of its property," what does this phrase mean in plan and ordinary language? In a strict legal definition of

"substantial" such as found in Black's Law Dictionary emphasis has been placed on worth or amount. Here the word "substantial" refers to the portion or part of the property and not worth.

Webster's Third New International Dictionary defines "substantial" as "an important or material part."

We do not think it necessary to discuss at length the etymology or the analytical definition of the word, "substantial." It should be noted though that this phrase used the terminology "a substantial portion" and does not use the terminology "a substantial amount." [1] This phrase does not use the terminology "substantial property." If not all (property) is involved, then a substantial or material part (of all the property) must be, for member approval to be required.

■ The total dollar value pledged was $299,000.00. This was a substantial amount or dollar worth. Was it a substantial part of the total property of the cooperative? It had assets agreed to by the parties of $4,762,786.00 on December 31, 1969, and of $5,307,735.00 on December 31, 1970. The $299,000.00 pledged is approximately 5% to 6% of the total. Six cents is not an important or material part of a dollar. Nor was the property pledged by the cooperative a substantial portion of its property.

■ In determining legislative intention words, phrases, and expressions will be accorded their ordinary meaning when practical to do so, but inapt or inadvertent use of words, phrases, or expressions, or use of language of doubtful meaning will not be permitted to change or destroy the otherwise clearly expressed intention of the legislature and such words, phrases, or expressions, or language of doubtful meaning will be construed so as to promote harmony in the various provisions of the act and give practical effect to the legislative in-

tent. See Board of Education, etc. v. Allen, 195 Okl. 209, 156 P.2d 596 (1945). The meaning of the phrase "any substantial portion of its property" as heretofore determined accomplishes this purpose. It allows Section 437.8(a) of this act and section 437.20 to be in harmony. Section 437.8(a) gives the board of trustees the power to manage the business and affairs of the cooperative. This delegation of power is limited by Section 437.20 when all or any substantial portion of its property is sold or encumbered by a requirement of member approval. The board is to operate the cooperative with the members to step in when all its property or a material part of its property is sold or encumbered. To hold otherwise, to say member approval is required when such a transaction involves a substantial amount or worth, would supplant the board by the membership in many business transactions. That should not often occur and only when all or a material part of the cooperative's property is sold or encumbered.

North Central Development Company was a creation of the cooperative. Its organization as an industrial development corporation was approved by formal resolution of the cooperative's trustees. The individual trustees were also its incorporators. They were named as the original board of directors of the development company in its articles of incorporation. The trustees by resolution chose the development company's name. The terms on the two boards were to run concurrently. The cooperative's manager became the development company's president and registered agent. The registered office of the development company and the principal place of business of the cooperative were the same. Staff was to come from the cooperative. The manager of the cooperative recommended details of operation of the development company to the cooperative's board. This included billing of rent, vehicle mileage and other expenses through the coop-

---

1. Paraphrased from language in Magruder v. Safe Deposit & Trust Co. of Baltimore, 121 F. 2d 981, 983 (4 Cir. 1941).

erative. In the cooperative's minutes of May 19, 1969, we find:

"It was decided by the board to meet as the Alfalfa Electric Cooperative, Inc. board and also the North Central Oklahoma Development Corporation board on the same day of the month if business on hand would permit without conflict."

The cooperative trustees passed a resolution in their meeting of February 16, 1970, wherein they recited that the cooperative was the sole member of the development company.

"It is a general rule that a corporation is a distinct legal entity separate and apart from other legal entities, but such distinct legal entity may be avoided if it appears from examination of the entire facts * * * that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation. Gulf Oil Corporation v. State, Okl., 360 P.2d 933 (1961)."

■ As applied to the case at bar and in the loan transactions with the defendant bank, we hold the development company was an adjunct of the cooperative. After an examination of the entire record, there is found a particular oneness in the two organizations. The development company was so organized, controlled and affairs so conducted as to be an instrumentality of the cooperative. The borrower and pledgor of the security becomes the same. The cooperative is the borrower. It had express power under the Rural Electrification Act to borrow and pledge its property. Section 437.2 provides:

"A Cooperative shall have power:

*    *    *    *    *    *

(j) To borrow money and otherwise contract indebtedness therefor and to secure the payment thereof by mortgage, pledge, deed or trust, or any other encumbrance upon any or all of its then owned or after acquired real or personal property, assets, franchises, revenues or income."

■ When acts of corporations are spoken of as ultra vires, it is not intended that they are unlawful, or even such as the corporation cannot perform, but merely those which are not within the powers conferred upon the corporation by the act of its creation. Schultz v. Morgan Sash & Door Company, Okl., 344 P.2d 253 (1959).

The loan transactions with the defendant bank was the borrowing of money by the cooperative. It had the power. It did not need membership approval for a substantial portion of its property was not pledged as security. The defense of ultra vires was not available insofar as the borrowing transaction with the bank is concerned.

We make no decision as to the lending transactions between the cooperative and the development company. That issue is not before us. No determination is made as to whether the lending of funds by the cooperative to the development company and those funds' ultimate use were or were not ultra vires, or within the power of the cooperative and the development company.

■■ The trial court was correct in deciding this case granting summary judgment on motion of the defendant bank. There was no substantial controversy on the material facts. Plaintiff argues these issues required additional evidence:

Ownership of the $49,000 and $90,000 certificates of deposit;

the development company had not been a customer of the bank; and

the purpose of the development company.

These issues are not material to the decision in this case. This is particularly true as to the first two issues with this court finding the development company to be an adjunct of the cooperative. The purpose of the development company cannot be disputed as found in its Articles of Incorporation. It was a non-profit corporation. Its purpose was to further the economic development of certain counties by promoting and assisting the growth and development of business concerns in the area. Its primary objection is stated in the Articles to be "benefit to the community as

measured by increased employment, payroll, business volume and corresponding factors."

At the last hearing before the trial court ruled on this case, counsel for the plaintiff was asked "what are the factual issues that the Court should hear before ruling as to the matter of law involved which it has not already ruled upon." Plaintiff's counsel replied, "I don't know of any others, Your Honor." We believe no other evidence was necessary for a determination of this cause by the trial court and the granting of summary judgment was proper.

Judgment affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and BERRY, BARNES and DOOLIN, JJ., concur.

IRWIN, HODGES and SIMMS, JJ., dissent.