**EASON OIL COMPANY and Cuma Oil Company, Inc., Appellants,**

v.

**CORPORATION COMMISSION of the State of Oklahoma, Appellee.**

No. 47036.

Supreme Court of Oklahoma.

Feb. 4, 1975.

Rehearing Denied May 27, 1975.

Ferrill H. Rogers, Oklahoma City, for appellants.

Barth P. Walker, Russell James Walker, Oklahoma City, for appellees, Sun Oil Co., Big Chief Drilling Co., Apache Exploration Co., Jerry Chambers Producing Co., Walter Duncan.

Lloyd G. Minter, C. J. Roberts, Bartlesville, Edward J. Fauss, Galen E. Ward, Oklahoma City, for appellee, Phillips Petroleum Co.

Harvey H. Cody, Jr., Conservation Atty., Corp. Commission, State of Oklahoma, Oklahoma City, for appellee.

LAVENDER, Justice:

The Norge Marchand Unit (Marchand) consists of all or parts of twenty-six sections in Townships 6 and 7, Range 8 West, Grady County, Oklahoma. It contains 75 wells and is approximately 7½ miles long by 3 miles wide. The common source of supply is the Marchand sand formation at a depth between 10 and 11 thousand feet. The discovery was in early 1971. The area was fully developed through drilling of some 70 wells by June, 1972.

The lessees undertook a study as to unitization in August, 1971, through an operating committee. The committee developed and approved a water flood. The project's purpose would be to maintain the then field pressure of approximately 2200 lbs. Different from most water floods, its objective would be to maintain pressure, not restore a completely depleted mechanical drive. It was believed the breakdown of the field and the flooding by water of producing wells would not occur until late life of the field. Prevention of deterioration of that pressure was estimated to allow a total production of approximately 55 million barrels of oil over a 15 year period. Production under ordinary conditions, without maintenance of that pressure through flooding, was estimated to yield 30 million barrels. Sun Oil Company was designated operator of the project.

August, 1973, Sun Oil Company (Sun) filed its application for creation of the unit and approval of Plan of Unitization. Notice was given to operators in that area. Evidentiary hearings were held by the Corporation Commission. Some 66%, as to surface acres in the unit, and 75%, as to participation interest in the plan, of the working interest owners ratified the plan. Sun, along with others who ratified, became proponents of the plan at the hearings. Some of these proponents, Sun Oil Company, Big Chief Drilling Company, Apache Exploration Company, Jerry Chambers Producing Co., Walter Duncan and Phillips Petroleum Company, with the Corporation Commission are the appellees in this court. Eason Oil Company and Cuma Oil Company, Inc., appellants, along with others, opposed the plan. Appellants proposed their own plan.

The Corporation Commission by Order No. 100904, dated October 31, 1973, created the Marchand Unit, approved the Plan of Unitization, and approved the tract participation percentage as provided in the plan. Appeal of this order was lodged in this court November 28, 1973. An application to vacate or modify and amend Order No. 100904 was filed by the now appellants in the Corporation Commission November 18, 1973. The February 22, 1974, Order No. 103387 denied that application. It modified some findings but reconfirmed Order No. 100904. That denial order was appealed. Supplemental petition of Sun was filed in the Corporation Commission January 11, 1974, seeking an order finding the plan had been ratified as required by statute. Order No. 103271, dated February 19, 1974, found the Unitization Plan had been adequately ratified and ordered the plan to be in effect. That order was appealed. Each of the three orders appealed were perfected as separate appeals. These appeals were consolidated in this court.

The creation of the unit and the water flood project itself is not opposed. All opposition is directed at the formula for the apportionment and allocation of the unit production contained in the plan. A division of interest or formula for that pur-

pose is required by 52 O.S.1971, § 287.4 to be included in the plan of unitization. That statute provides in part:

"* * * and subject to the further requirements hereof, each such plan of unitization shall contain fair, reasonable and equitable provisions for:

* * * * * *

(b) The division of interest or formula for the apportionment and allocation of the unit production, among and to the several separately-owned tracts within the unit area such as will reasonably permit persons otherwise entitled to share in or benefit by the production from such separately-owned tracts to produce or receive in lieu thereof, their fair, equitable and reasonable share of the unit production or other benefits thereof. A separately-owned tract's fair, equitable and reasonable share of the unit production shall be measured by the value of each such tract for oil and gas purposes and its contributing value to the unit in relation to like values of other tracts in the unit, *taking into account acreage, the quantity of oil and gas recoverable therefrom, location on structure, its probable productivity of oil and gas in the absence of unit operations, the burden of operation to which the tract will or is likely to be subjected,* or so many of said factors, or such other pertinent engineering, geological, or operating factors, as may be reasonably susceptible of determination." (Emphasis Added)

Appellants argue subsection (b), supra, mandates and requires the five delineated items be used in designing the value of the separately-owned tracts as to its contribution to the total value of the unit.

■ The plan of unitization must contain fair, reasonable and equitable provisions for the apportionment and allocation of the unit production among the separately-owned tracts. A separately-owned tract's share of the unit production must be measured by the value it contributes to the total value of the unit for oil and gas pur-

poses. Each tract must be measured by the same set of values as must the unit as a whole. In the construction of statutes, the word "shall" is usually given its common meaning of "must" and interpreted as implying a command or mandate depending upon the construction of the statute as a whole and the intention of the Legislature. Oklahoma Alcoholic Beverage Control Board v. Moss, Okl., 509 P.2d 666 (1973).

After the command or mandate requirements subdivision (b), supra, provides in conjunction with the values to be considered for oil and gas purposes:

"* * * taking into account * * * (setting out five factors) * * * or so many of said factors, or such other pertinent engineering, geological, or operating factors, as may be reasonably susceptible of determination."

The five listed factors are proper ones to be considered. The use and emphasis to be placed upon all, part, or none of these five factors is not mandated by statute. Other engineering, geological, or operating factors may be used. These additional factors are to be pertinent and reasonably susceptible of determination. The formula is not placed in a statutory strait-jacket by a demand the five listed factors must be used. This would render useless the phrase "or so many of said factors, or such other * * * factors * * *."

■ Legislative acts are to be construed in such manner as to reconcile the different provisions and render them consistent and harmonious, and give intelligent effect to each. Personal Loan & Finance Co. v. Oklahoma Tax Com'n, Okl., 437 P.2d 1015 (1968). In Alfalfa Electric Coop., Inc. v. First National Bank & Trust Co., Okl., 525 P.2d 644 (1974), this court said:

"A general rule is that all legislative enactments must be interpreted in accordance with their plain ordinary meaning according to the import of the language used."

and,

"In determining legislative intention words, phrases, and expressions will be

accorded their ordinary meaning when practical to do so, * * *."

In the case at bar, the Corporation Commission had before it an unitization plan containing a formula for allocation of the unit production to the separately-owned tracts composing the unit. That formula was composed of the percentage placed on each of five factors to arrive at an oil and gas value for each tract and its contribution to the total value of the unit. These factors and values were:

Current production: 30%

Tract's adjusted oil sales volume for six month period—July 1, 1972 to Dec. 31, 1972.

Well Quality: 20%
Tract's daily average adjusted oil sales volume for "best" two out of three months—Oct., Nov., & Dec., 1972.

Future Primary Production: 30%
Tract's remaining primary reserves as of Jan. 1, 1973, as forecast utilizing a two dimensional reservoir simulation model.

Ultimate Primary: 10%
Sum total of cumulative adjusted oil sales volume as of Jan. 1, 1973, and future primary production as previously described.

Reservoir Barrels—Hydrocarbon Pore Volume: 10%
Tract's hydrocarbon pore volume as determined by computer, long analysis and computer mapping. Factors utilized in determination of reservoir barrels were each well's net pay thickness, average porosity, and average water saturation.

The plan with this value formula was the result of two and a half years' study. Proponents' expert witnesses expressed opinions as to its fairness. Opponents' expert witnesses did not agree. Their objection was too much stress on present production and not enough importance placed on acre feet or volume of the production sand under each separately-owned tract. Appellants developed their own plan stressing this factor of volume. It was described as a two phase plan. A type approved by this court heretofore. This plan was objectionable to some experts. It did not allow for variance of quality and porosity of the production sand. The evidence presented to the Corporation Commission was in conflict. It approved the unitization plan presented by Sun in its application.

■ We find the formula allocation to the separately-owned tracts of the unit production was sustained by substantial evidence. It did meet the statutory requirement of containing a fair, reasonable, and equitable provision for a formula for the apportionment and allocation of the unit production. The formula was reasonably calculated to measure the value of each tract's contribution to the total value of the unit for oil and gas purposes. Each tract was measured by the same set of values as was the unit. The statutory requirements of subsection (b), supra, were met.

■ The Corporation Commission determined the formula in the instant case to be proper under the statutory requirements and guidelines. That determination is supported by substantial evidence. The appellants would agree as to substantial evidence. In stating their position they said:

"What is here presented is not a question of 'substantial evidence' to support an order of the Corporation Commission, but, rather—whether the order entered has any statutory basis!"

The appellants contend no statutory bases for the formula existed because the five required factors were not included. We hold the five factors set out in subsection (b), supra, are proper factors to be considered in the formula. They are legislative guidelines. They are not legislative mandates. Any or all may be included or excluded depending on whether such factors are pertinent. Other pertinent factors may

be included. Inclusion of the five factors is not the statutory test.

Appellants would void Order No. 100904 dated October 31, 1973, finding it to be in violation of 52 O.S.1971, § 287.5.[1] That section provides no order of the Commission creating a unit and prescribing the plan of unitization applicable thereto shall become effective unless and until the plan of unitization has been ratified in writing by a required percent of lessees and royalty owners of record in the unit area. If the plan has not been so ratified when the order creates the unit, then a supplemental hearing may be held and supplemental order entered for the making of that determination. If the required ratification is not secured within six (6) months from the date on which the order creating the unit is made then the order creating the unit is of no further force and shall be revoked by the Commission.

Order No. 100904 finds ratification by the lessees but not the royalty owners. It orders the unit created, identifies the common source of supply and area, approves the tract participation, names the operator, and retains continuing jurisdiction over the unit and plan. It orders the creation of the unit to be effective immediately but provides for supplemental hearings on notice to determine ratification by the re-

quired percentage of royalty interest owners. It provides the order creating the unit shall cease to be in effect if the ratification is not secured within six months from the date of the order.

The order distinguishes between the creation of the unit as immediately effective and the effective date of the plan of unitization. This would only be after ratification and a supplemental order of the commission making that determination.

In Price v. Corporation Commission, Okl., 382 P.2d 425 (1963), we said:

"Our statute, 52 O.S.1961 § 287.5 clearly provides that no order of the Commission creating a unit and prescribing a plan of unitization shall become effective until the plan has been ratified by the required number of lessees and owners, and until the Commission has made a finding either in the order creating the unit or after additional hearings, in a supplementary order that the plan has been so ratified."

In Price, supra, the original order created the unit and approved the plan. It provided the plan was to be effective upon the ratification by the required number of lessees and owners and that fact determined by a subsequent order of the Commission.

■ In the case at bar the order provided for the determination of the ratifica-

1. § 287.5 Ratification or approval of plan by lessees and owners

"No order of the Commission creating a unit and prescribing the plan of unitization applicable thereto shall become effective unless and until the plan of unitization has been signed, or in writing ratified or approved by lessees of record of not less than sixty three per cent (63%) of the unit area affected thereby and by owners of record of not less than sixty three per cent (63%) (exclusive of royalty interests owned by lessees or by subsidiaries of any lessee) of the normal one-eighth (⅛) royalty interest in and to the unit area, and the Commission has made a finding either in the order creating the unit or in a supplemental order that the plan of unitization has been so signed, ratified or approved by lessees and royalty owners owning the required percentage interest in and to the unit area. Where the plan of unitization has not been so signed, ratified or approved by lessees and

royalty owners owning the required percentage interest in and to the unit area at the time the order creating the unit is made, the Commission shall, upon petition and notice, hold such additional and supplemental hearings as may be requested or required to determine if and when the plan of unitization has been so signed, ratified or approved by lessees and royalty owners owning the required percentage interest in and to the unit area and shall, in respect to such hearings, make and enter a finding of its determination in such regard. In the event lessees and royalty owners, or either, owning the required percentage interest in and to the unit area have not so signed, ratified or approved the plan of unitization within a period of six (6) months from and after the date on which the order creating the unit is made, the order creating the unit shall cease to be of further force and effect and shall be revoked by the Commission."

tion. It did not provide the plan would not be effective until ratification and a determination by supplemental order of that fact. We believe the ratification and the determination of that fact by the Commission is required by law. The plan is not effective until this has been accomplished. This is based on statute and not on a necessary provision of the order.

The statute does say no order of the Commission creating the unit and prescribing the plan of unitization shall become effective until ratification and determination of that fact. This seems clear as found in Price, supra. However, the last portion of the section would suggest the portion of the order creating the unit might have some immediate effect which is terminated if the required ratification of the plan is not secured within the specified time.

In the instant case, we hold that issue not to be material. After Order No. 100904 on October 31, 1973, supplemental hearing was held February 4, 1974. Order No. 103271, dated February 19, 1974, determined the fact of the required ratification. It then ordered the plan of unitization to be in effect and the lessees could proceed with the unitized management, operation, and further development of the unit area in accordance with the original order and the approved plan. This record shows no attempt to effect the unit or seek to implement the plan until the required ratification and determination of that fact on February 19, 1974, by supplemental order. The statutory necessity of ratification and determination of that fact was accomplished before any attempt, other than to secure the ratification required by law, to effect the order creating the unit and the plan of unitization.

Under these facts we do not hold Order No. 100904 void.

The appellants do not argue and have abandoned any objection to Order No. 103387, dated February 22, 1974. This was appellants' application to vacate or modify Order No. 100904. It was denied and Order No. 100904 reaffirmed with some mod-

ifications in findings not involved in these appeals. Any objections to this last order would have been decided in this appeal by upholding Order No. 100904.

Orders No. 100904, No. 103271, and No. 103387 are affirmed.

WILLIAMS, C. J., HODGES, V. C. J., and IRWIN, BERRY, SIMMS and DOOLIN, JJ., concur.

DAVISON, J., concurs in result.

BARNES, J., dissents.

BARNES, Justice (dissenting):

I respectfully dissent to the Majority Opinion. It appears to me that 52 O.S. 1971, § 287.4(b), requires the Corporation Commission to use the parameters [acreage, the quantity of oil and gas recoverable therefrom, the location on the structure, the probable productivity of oil and gas, and the burden of operation to which the tract will or is likely to be subjected] set out in the statute, along with any other pertinent engineering, geological, or operating factors reasonably susceptible of determination in arriving at the formula for the apportionment and allocation of the unit production.

In addition, I am convinced, in order that it does not become a guessing game as to why the said parameters were not used in a particular case, that the statute requires that the Commission set out in its order why certain parameters were not used. For example, that acreage was not susceptible of determination, or that the location on the structure under consideration was not of sufficient importance to be given any weight in the formula. It may well be that, if this case were remanded for treatment of the specific parameters, the Commission's formula would be the same, but at least the parties would know why certain parameters had been rejected in the formula adopted and would have specific issues upon which to base their appeal.

I therefore respectfully dissent to the Majority Opinion.