2012 OK 75

**ZALOUDEK GRAIN COMPANY,**
Plaintiff/Appellee,

v.

**COMPSOURCE OKLAHOMA,**
Defendant/Appellant.

No. 110,662.

Supreme Court of Oklahoma.

Sept. 18, 2012.

Rehearing Denied March 25, 2013.

Kerry R. Lewis and James D. Johnson, Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C., Tulsa, Oklahoma, for Defendant/Appellant.

Richard E. Hornbeek, John E. Vitali, and Larry G. Cassil, Jr., Hornbeek Vitali & Braun, P.L.L.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee.

COMBS, J.

¶ 1 This is an appeal of the trial court's Final Order granting summary judgment in favor of the Plaintiff/Appellee, Zaloudek Grain Company (Zaloudek). Zaloudek claims its workers' compensation policy was unlawfully canceled by the Defendant/Appellant, CompSource Oklahoma (CompSource). CompSource argues it properly canceled Zaloudek's policy pursuant to subsection (G) of section 64 of title 85 of the Oklahoma Statutes[1] and subsection (C) of section 3639 of title 36 of the Oklahoma Statutes[2] is not applicable to CompSource.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Zaloudek held a workers' compensation policy with CompSource for approximately ten years prior to 2011. Zaloudek was required each year to provide payroll audit information to CompSource. The audit information is used to determine the proper premium for each year. CompSource sent a notice dated December 15, 2010, to Zaloudek requesting workers' compensation premium audit information. In January, 2011, Zaloudek's policy was renewed for the policy period January 1, 2011, through January 1, 2012. On January 18, 2011, CompSource sent another letter requesting Zaloudek provide the necessary payroll audit information by February 2, 2011. Upon not receiving the audit information, CompSource sent out a "courtesy notification" on February 4, 2011. This notification informed Zaloudek that the process of canceling its policy would begin if CompSource did not receive the audit information by February 16, 2011. The audit information was not provided and on February 16, 2011, CompSource sent a statutory "Notice of Pending Cancellation" stating Zaloudek's policy would be canceled effective March 3, 2011, at 12:01 a.m. It further informed Zaloudek that it could not apply for a new policy until an audit was completed on the canceled policy term.

¶ 3 On March 17, 2011, CompSource sent another letter advising Zaloudek that the policy had been canceled on March 3, 2011, and instructing Zaloudek how to reapply. CompSource made a credit refund to Zaloudek in the amount of $1342 on July 22, 2011.[3]

---

1. Citations in this opinion are made to the law in effect at the time of the cancellation of the Zaloudek policy, March 3, 2011, unless otherwise indicated. 85 O.S. Supp.2006, § 64(G) was repealed by 2011 Okla. Sess. Laws ch. 318, § 87; the language of this section was then codified in a new section of law, 85 O.S.2011, § 356, by 2011 Okla. Sess. Laws ch. 318, § 56.

2. 36 O.S. Supp.2007, § 3639(C).

3. The credit refund was made pursuant to 85 O.S.2001, § 67.1, which was repealed effective August 26, 2011, by 2011 Okla. Sess. Laws ch. 318, § 87, but was in effect for the period relevant to this case. § 67.1 provided as follows:
   [i]f any insurance company shall cancel any policy of Workers' compensation insurance issued by it upon risks within this state, the premium or consideration therefor, or any part thereof having been actually paid, it shall, within one hundred eighty (180) days after the

Six days later, CompSource faxed an application for workers' compensation insurance to Zaloudek. On August 4, 2011, two teenage workers were seriously injured in the grain auger at Zaloudek's facility. On the same day, Zaloudek mailed its application for workers' compensation coverage to Comp-Source. CompSource claims the application was received on August 5, 2011, and it was not accepted because the application was incomplete and was not signed by an owner of Zaloudek. The application contained the following standard provision "[c]overage will become effective 12:01 a.m. the day following acceptance of the properly signed application and receipt of the specified premium in our office."

¶ 4 Zaloudek filed its Petition on August 25, 2011, asking for a judgment against CompSource for breach of contract and bad faith and further requested declaratory relief in the form of an order requiring Comp-Source to provide workers' compensation coverage. On December 23, 2011, Zaloudek filed a motion for summary judgment claiming CompSource lacked legal justification for terminating its policy and requested orders to establish there was no lapse in coverage and requiring CompSource to provide coverage for its two injured employees. Zaloudek further requested a finding that CompSource was in breach of contract.

¶ 5 CompSource filed its response and cross-motion for summary judgment on January 11, 2012, requesting summary judgment

and denial of Zaloudek's motion for summary judgment because Zaloudek was not covered at the time of the incident and its policy was properly canceled. Zaloudek filed a countermotion for summary judgment asserting CompSource should be estopped from denying coverage because it retained premiums and acted in a manner toward Zaloudek consistent with continued coverage. On October 26, 2011, the trial court issued an order dismissing Zaloudek's bad faith claim but left pending its claims for breach of contract and declaratory relief.

¶ 6 On March 30, 2012, the trial court entered its Final Order whereby it granted Zaloudek's motion for summary judgment, denied CompSource's cross-motion for summary judgment, and found Zaloudek's counter-motion for summary judgment and its claim for equitable estoppel to be moot. The trial court ruled "1) 36 O.S. § 3639 applies to CompSource Oklahoma." The order further stated:

> ... the Court finds there is no just reason for delay and this Court expressly directs the filing of a Final Order. 12 O.S. § 994(a). The Court further stays Plaintiff Zaloudek Grain Company's remaining claims and stays the enforcement of this Final Order pending the resolution of the appeal of the rulings contained herein. 12 O.S. § 994(b).

This Court deems the language in the order as the functional equivalent of the certification required by section 952 of title 12[4] of

effective date of said cancellation, make an audit of the payroll of such risk to determine the portion of said premium or consideration which has been earned and the portion thereof which has not been earned, respectively, and furnish a copy of said audit to the policyholder and return, within a reasonable time after the effective date of such cancellation, the unearned portion of the premium or consideration actually paid, said company retaining only the pro rata part thereof.

4. 12 O.S.2011, § 952, provides as follows:
(a) The Supreme Court may reverse, vacate or modify judgments of the district court for errors appearing on the record, and in the reversal of such judgment may reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof.
(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:

1. A final order;
2. An order that discharges, vacates or modifies or refuses to vacate or modify a provisional remedy which affects the substantial rights of a party; or grants, refuses, vacates, modifies or refuses to vacate or modify an injunction; grants or refuses a new trial; or vacates or refuses to vacate a final judgment;
3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. If the Supreme Court assumes jurisdiction of the appeal, it shall indicate in its order whether the action in the trial court shall be stayed or shall continue. The failure of a party to appeal from an order that is appealable under either subdivision 2 or 3 of subsection (b) of this section shall not

the Oklahoma Statutes. We recast the petition in error as a petition for a writ of certiorari from a certified interlocutory order and grant the writ.[5]

## STANDARD OF REVIEW

¶ 7 An appeal on summary judgment comes to this Court as a *de novo* review. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On appeal, this Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. The question presented to us involves ascertainment of legislative intent which necessarily involves statutory construction. Statutory interpretation of a legal issue demands a *de novo* review standard.[6] Basic rules of statutory interpretation are often utilized by this Court. In *TRW/Reda Pump v. Brewington*, 1992 OK 31, ¶ 5, 829 P.2d 15, 20, we stated:

> The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. *Ledbetter v. Alcoholic Beverage Laws Enforcement Commission*, 764 P.2d 172, 179 (Okla.1988). If a statute is plain and unambiguous and its meaning clear and no occasion exists for the application of rules of construction a statute will be accorded the meaning expressed by the language used. *Berry v. Public Employees Retirement System*, 768 P.2d 898, 899–900 (Okla.1989), quoting *Caves [Cave] Springs Public School District [v. Blair]*, 613 P.2d 1046, 1048 (Okla.1980). However, where a statute is ambiguous or its meaning uncertain it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent. *See Berry, supra* at 900–901; *Grand River Dam Authority v. State*, 645 P.2d 1011, 1019 (Okla. 1982). Further, the Legislature will not be presumed to have done a vain and useless act in the promulgation of a statute [*Cunningham v. Rupp Drilling, Inc.*, 783 P.2d

985, 986 (Okla.Ct.App.1989) ], nor will an inept or incorrect choice of words be applied or construed in a manner to defeat the real or obvious purpose of a legislative enactment. *Wooten v. Hall*, 442 P.2d 334, 336 (Okla.1968).

"The goal of statutory construction is always to follow legislative intent." *Humphrey v. Denney*, 1988 OK 69, ¶ 8, 757 P.2d 833, 835. "In ascertaining legislative intent the language of the entire act should be construed with a reasonable and sensible construction." *Udall v. Udall*, 1980 OK 99, ¶ 11, 613 P.2d 742, 745. "Legislative acts are to be construed in such manner as to reconcile the different provisions and render them consistent and harmonious, and give intelligent effect to each." *Eason Oil Co. v. Corporation Commission*, 1975 OK 14, ¶ 9, 535 P.2d 283, 286. This Court has found "legislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent." *City of Duncan v. Bingham*, 1964 OK 165, ¶ 12, 394 P.2d 456, 460. "Put simply, when called on to interpret a statute or ordinance a court's function given our tripartite system of government is to interpret or construe the applicable provision in an effort to expose the legislative will or intent and apply it to the applicable fact situation then extant, not to itself legislate or draft a law nor make policy decisions concerning the wisdom of what the legislative branch has enacted." *Wylie v. Chesser*, 2007 OK 81, ¶ 20, 173 P.3d 64, 72.

## ANALYSIS

### I. THE APPLICABILITY OF TITLE 36 O.S. SUPP.2007 § 3639(C) TO COMPSOURCE

¶ 8 Zaloudek's main assertion is CompSource is not legally able to terminate a workers' compensation policy for mere failure to provide audit information. Zaloudek cites to section 3639(C) which specifies what conditions must occur before a "licensed insurer or surplus or excess lines insurer" may

---

5. See *In The Matter Of The Application Of Eaton Enterprises*, 2003 OK 14, ¶ 4, 65 P.3d 277, 279.

preclude him from asserting error in the order after the judgment or final order is rendered.

6. *Barnhill v. Multiple Inj. Trust Fund*, 2001 OK 114, ¶ 8, 37 P.3d 890, 894.

cancel certain coverage.[7] Cancellation for failure to provide audit information is not one of the listed conditions.

¶ 9 CompSource asserts section 3639(C) is not applicable and that the provisions of the Oklahoma Insurance Code[8] (Insurance Code) only apply to CompSource when CompSource is specifically referenced. Zaloudek does not allege CompSource is a surplus or excess lines insurer so our analysis will look at whether CompSource is a "licensed insurer" for purposes of this statute.

■ ¶ 10 We find that CompSource is neither an "insurer" for purposes of section 3639(C) nor is it licensed by the Insurance Commissioner. Therefore, section 3639(C) does not apply to CompSource.

¶ 11 The record reflects the trial court found CompSource to be an insurer for purposes of section 3639(C) based upon CompSource's inclusion in the definition of "insurance carrier" found in title 85. Section 3 of title 85 of the Oklahoma Statutes added CompSource to the definition of "insurance carrier."[9] Section 3 is a definitions section and is prefaced with "[a]s used in the Workers' Compensation Act." The Workers' Compensation Act, now the Workers' Compensation Code, is entirely encompassed within title 85.[10] This section specifically limits the use of those definitions to the Act and therefore such definitions are not applicable to the Insurance Code which is found in title 36.

¶ 12 Zaloudek also argues that CompSource is an insurer under the definition of "insurer" in the Insurance Code. Section 103 of the Insurance Code states that an "[i]nsurer includes every person engaged in the business of making contracts of insurance or indemnity."[11] "Person" is defined in section 104 as: "includes an individual, company, insurer, association, organization, society, reciprocal or inter-insurance exchange, partnership, syndicate, business trust, corporation, Lloyd's association, and entity, and association, group or department of underwriters and any farmer's educational and co-operative union."[12] However, in order to have authority to transact insurance in Oklahoma under the Insurance Code an insurer must:

> be an incorporated stock insurer, an incorporated mutual insurer, a mutual benefit association, a nonprofit hospital service and medical indemnity corporation, a farmers mutual fire insurance association, a Lloyd's association or a reciprocal insurer, of the same general type as may be formed

---

7. 36 O.S. Supp.2007, § 3639(C), provides as follows:

> After coverage has been in effect for more than forty-five (45) business days or after the effective date of the renewal of a commercial marine, commercial automobile, commercial property, commercial casualty or commercial fire insurance policy, a notice of cancellation shall not be issued by *any licensed insurer or surplus or excess lines insurer* unless it is based on at least one of the following reasons with at least ten (10) days notice to the insured:
> 1. Nonpayment of premium; 2. Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder; 3. Discovery of *willful or reckless acts or omissions on the part of the named insured which increase any hazard insured against;* 4. The occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed; 5. A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against; 6. A determination by the Commissioner that the continuation

> of the policy would place the insurer in violation of the insurance laws of this state; 7. Conviction of the named insured of a crime having as one of its necessary elements an act increasing any hazard insured against; or 8. Loss of or substantial changes in applicable reinsurance.

8. The Oklahoma Insurance Code is comprised of all of title 36 of the Oklahoma Statutes. 36 O.S.2001, § 101.

9. 85 O.S. Supp.2010, § 3, was repealed by 2011 Okla. Sess. Laws ch. 318, § 87, but was also codified into a new section of law 85 O.S.2011, § 308, by the same act, 2011 Okla. Sess. Laws ch. 318, § 8.

10. The Workers' Compensation Act was renamed the Workers' Compensation Code by 2011 Okla. Sess. Laws ch. 318, § 1. It now encompasses §§ 301 to 413 of title 85 of the Oklahoma Statutes.

11. 36 O.S.2001, § 103.

12. 36 O.S. Supp.2004, § 104.

as a domestic insurer under this Code . . .[13]

¶ 13 The State Insurance Fund (Fund) was created in 1933.[14] CompSource is the successor to the Fund.[15] The Fund was created to be a "revolving fund" for the purpose of insuring employers against liability for compensation under Oklahoma's workers' compensation laws.[16] CompSource has been described by this Court as not being "an independent corporate entity or a governmental agency created by law and vested with a measure of governmental power, but a mere department created for a fixed and limited purpose, over which the state, through its Legislature and its officials, retains absolute domination and control."[17] CompSource's employees are state employees and the President and Chief Executive Officer's salary is set by statute.[18] It is a state department created for the purpose of insuring employers against liability for compensation pursuant to the Workers' Compensation Code and is required to be "fairly competitive with other insurance carriers."[19] It is not an incorporated stock insurer, an incorporated mutual insurer, a mutual benefit association, a nonprofit hospital service and medical indemnity corporation, a farmers mutual fire insurance association, a Lloyd's association nor a reciprocal insurer.

¶ 14 The Fund/CompSource has been in existence for almost eighty years and yet the legislature has not added it to the list of entities in the Insurance Code's general definition of "insurer." This is so even though in 2010, as mentioned, the legislature amended the Workers' Compensation Act to include CompSource in the definition of "insurance carrier." References to CompSource in the Insurance Code further indicate the legislature's intent to distinguish it from "insurer" for purposes of the Code. For example, in subsection C of section 924.2 of the Code, CompSource is singled out from insurance companies. This subsection provides as follows:

C. Eligible employers shall be those employers:

1. Who are insured by an insurance company writing workers' compensation insurance in this state;

2. Who are self-insured; or

3. Who are insured by CompSource Oklahoma.

Another example is found in the Unfair Claims Settlement Practices Act (UCSPA) which is a part of the Insurance Code.[20] The UCSPA's definition of "insurer" specifically includes CompSource for purposes of the Unfair Claims Settlement Practices Act.[21] This definition only applies to the UCSPA and not the entire Insurance Code. If CompSource was considered by the legislature to fall under the general definition of "insurer" found in section 103 of the Insurance Code, then it would not be necessary to refer to it specifically in the UCSPA. Even though CompSource was included in the definition of "insurer" for the UCSPA other provisions of the UCSPA exclude CompSource when the legislature determined such provisions were only applicable to other UCSPA insurers.[22] This further shows legislative intent to treat CompSource differently.

---

13. 36 O.S.2001, § 607.

14. 1933 Okla. Sess. Laws ch. 28, § 1.

15. In 2001, the legislature changed the name to CompSource Oklahoma; 2001 Okla. Sess. Laws ch. 378, § 1.

16. 1933 Okla. Sess. Laws ch. 28, § 1.

17. *O.K. Constr. Co. v. Burwell,* 1939 OK 248, ¶ 10, 93 P.2d 1092, 1094.

18. 74 O.S. Supp.2009, § 840–5.10 and 74 O.S. Supp.2010, § 3601.2.

19. 85 O.S. Supp.2002, § 131; renumbered as 85 O.S.2011, § 375 by 2011 Okla. Sess. Laws ch. 318, § 88.

20. 36 O.S. §§ 1250.1 through 1250.16.

21. 36 O.S. Supp.2009, § 1250.2(7), provides as follows:

"Insurer" means a person licensed by the Commissioner to issue or who issues any insurance policy or insurance contract in this state, including Compsource, and also includes health maintenance organizations. Provided that, for the purposes of paragraphs 15 and 16 of Section 1250.5 of this title, 'insurer' shall include the State and Education Employees Group Insurance Board;

22. 36 O.S. Supp.2010, § 1250.4(A), provides as follows: "An insurer's claim files, other than the claim files of the State Insurance Fund, shall be subject to examination by the Insurance Com-

¶ 15 CompSource points out another example to show the legislature intended to treat CompSource as if it was not meant to be included in the Insurance Code's general definition of "insurer." The Insurance Code provides minimum requirements for the Insurance Commissioner to examine domestic insurers.[23] It also requires insurers to submit annual financial statements to the Insurance Commissioner.[24] However, such provisions concerning CompSource are separately provided for under the Workers' Compensation Code:

> CompSource Oklahoma shall submit to the State Insurance Commissioner an annual financial statement in the same manner as a domestic insurance carrier. The Insurance Commissioner may audit CompSource Oklahoma in the same manner as a domestic insurance company if an audit does not conflict with any specific provision contained herein.

85 O.S. Supp.2002, § 139; renumbered as 85 O.S.2011, § 389 by 2011 Okla. Sess. Laws ch. 318, § 88. CompSource argues section 139 would be a useless act if the legislature intended the definition of "insurer" in the Insurance Code to include CompSource. It asserts the only rational construction is that the legislature did not intend to include CompSource in that definition except to the extent it explicitly has done so. Essentially, they argue the Insurance Code only applies to CompSource when it specifically refers to CompSource. We agree.

¶ 16 The rational conclusion obtained from the legislature's silence in the general definition of "insurer" along with its specific treatment of CompSource in other parts of the Insurance Code is that the legislature intended for the provisions of the Insurance Code to only apply to CompSource when it specifically refers to CompSource.

¶ 17 When the Fund was established in 1933 the State Industrial Commission was vested with full power, authority and jurisdiction over the Fund.[25] This power and authority extended to managing and conducting all business and affairs relating to The State Insurance Fund. The structure of The State Insurance Fund was later amended in 1937. A Board of Managers was created to oversee The State Insurance Fund.[26] The Board was authorized to appoint a State Insurance Fund Commissioner (Commissioner). Both the Commissioner and its successor, the CompSource Oklahoma President and Chief Executive Officer, have statutorily been "vested with full power, authority and jurisdiction" over the Fund and CompSource respectively.[27]

¶ 18 Section 3639(C) applies to a "licensed insurer." A license grants authority to perform a certain act or acts. The license referred to in section 3639(C) can only mean one granted by the Insurance Commissioner to transact the business of insurance in this state. Section 606(A) of Title 36 of the Oklahoma Statutes provides "[n]o person shall act as an insurer and no insurer shall transact insurance in Oklahoma except as authorized

missioner ..."; 36 O.S.2001, § 1250.11(B), provides as follows: "The Insurance Commissioner shall not assert enforcement jurisdiction pursuant to this section over the State Insurance Fund."; and 36 O.S.2001, § 1250.13(A), provides as follows: "The Insurance Commissioner, upon finding an insurer, other than the State Insurance Fund, in violation of any provision of the Unfair Claims Settlement Practices Act, shall issue a cease and desist order to said insurer directing it to stop such unlawful practices."

23. 36 O.S. Supp.2009, § 309.2, provides as follows:

A. The Insurance Commissioner or an examiner may conduct an examination, including a financial and market conduct examination, under Sections 309.1 through 309.7 of this title of any company as often as the Commissioner

deems appropriate but shall at a minimum, conduct a financial examination of every domestic insurer licensed in this state not less frequently than once every three (3) years ...

24. 36 O.S. Supp.2004, § 311(A)(1), provides as follows: "... Domestic insurers shall file a printed annual financial statement along with all supplement filings in the office of the Insurance Commissioner annually on or before the first day of March."

25. 1933 Okla. Sess. Laws ch. 28, § 2–3.

26. 1937 Okla. Sess. Laws ch. 72, § 1.

27. 1937 Okla. Sess. Laws ch. 72, § 4 and 85 O.S. Supp.2002, § 132; renumbered as 85 O.S.2011, § 379 by 2011 Okla. Sess. Laws ch. 318, § 88.

by a subsisting authority granted to it by the Insurance Commissioner, except as to such transactions as are expressly otherwise provided for in this Code." [28] Section 109 of the Insurance Code further states "[n]o person shall transact a business of insurance in Oklahoma without complying with the appli-

cable provisions of this Code." [29] Neither of these sections is applicable to CompSource because it derives its authority to provide workers' compensation insurance from sections in the Workers' Compensation Code and not from the Insurance Commissioner nor the Insurance Code.[30] Therefore, Comp-

**28.** 36 O.S.2001, § 606(A).

**29.** 36 O.S.2001, § 109.

**30.** 1) 85 O.S. Supp.2002, § 132; renumbered as 85 O.S.2011, § 379 by 2011 Okla. Sess. Laws, ch. 318, § 88, provides as follows:

The CompSource Oklahoma President and Chief Executive Officer is hereby vested with full power, authority and jurisdiction over CompSource Oklahoma. He or she shall perform any duties which are necessary or convenient in the exercise of any power, authority, or jurisdiction over the fund in the administration thereof, or in connection with the insurance business to be carried on by him or her under the provisions of Sections 131 through 151 of this title as fully and completely as a governing body of a private insurance carrier might or could do including the acquisition, operation and maintenance of an electronic data processing facility.

The Board of Managers of CompSource Oklahoma shall have full power and authority to fix and determine the rates to be charged by CompSource Oklahoma for insurance.

2) 85 O.S. Supp.2006, § 133; renumbered as 85 O.S.2011, § 381 by 2011 Okla. Sess. Laws ch. 318, § 88, provides as follows:

The CompSource Oklahoma President and Chief Executive Officer shall have full power and authority to manage and conduct all business and affairs relating to CompSource Oklahoma, all of which business and affairs shall be conducted under the name of CompSource Oklahoma, and in that name and without any other name or title, the CompSource Oklahoma President and Chief Executive Officer may:

(1) Sue and be sued in all the courts of the state, in all actions arising out of any act, deed, matter or things made, omitted, entered into, done or suffered in connection with CompSource Oklahoma, and administer, manage, or conduct all the business and affairs relating thereto.

(2) Make and enter into contracts of insurance as herein provided, and such other contracts or obligations relating to CompSource Oklahoma, as are authorized or permitted under the provisions of this title, including contracting with or appointing agents or brokers; provided the agents or brokers do not contract with or have an appointment solely with CompSource Oklahoma ...

(4) Conduct all business and affairs, relating to CompSource Oklahoma, whether herein specifically designated or in addition thereto ...

3) 85 O.S. Supp.2008, § 134; renumbered as 85 O.S.2011, § 382 by 2011 Okla. Sess. Laws ch. 318, § 88, provides as follows:

A. In conducting the business and affairs of CompSource Oklahoma, the CompSource Oklahoma President and Chief Executive Officer, or other officer to whom such power and authority may be delegated by the CompSource Oklahoma President and Chief Executive Officer, as provided by Section 133 of this title, shall have full power and authority:

1. To enter into contracts of insurance, insuring employers against liability for compensation, and insuring to employees and other persons entitled thereto compensation as provided by the Workers' Compensation Act, Section 1 et seq. of this title;

2. To decline to insure any risk in which the minimum requirements of the law with regard to construction, equipment and operation are not observed, or which is beyond the safe carrying of CompSource Oklahoma, but shall not have power or authority, except as otherwise provided in this act to refuse to insure any compensation risk tendered with the premium therefor;

3. To enter into contracts of insurance insuring persons, firms and corporations against loss, expense or liability by reason of bodily injury, death by accident, occupational disability, or occupational disease suffered by employees for which the insured may be liable or have assumed liability, including, but not limited to, contracts of insurance or reinsurance for the purpose of insuring employers operating in this state and their employees who may work outside this state;

4. To purchase reinsurance for any risk or any portion of any risk of CompSource Oklahoma. The purchase of reinsurance may be made through intermediaries, exclusive of the provisions of The Oklahoma Central Purchasing Act;

5. To inspect and audit, cause to be inspected and audited, or require production of the records of employers insured with or applying for insurance with CompSource Oklahoma against liability for compensation;

6. To contract with physicians, surgeons and hospitals for medical and surgical treatment and the care and nursing of injured persons entitled to benefits from said fund;

7. To meet the reasonable expenses of conducting the business of CompSource Oklahoma;

8. To produce a reasonable surplus to cover catastrophe hazard; and

Source is also not "licensed" by the Insurance Commissioner because its authority is founded in the Workers' Compensation Code and is not dependent upon the Insurance Commissioner or the Insurance Code.[31] CompSource is not a "licensed insurer" for purposes of section 3639(C) and therefore section 3639(C) is not applicable to CompSource.

## II. COMPSOURCE'S CANCELLATION OF ZALOUDEK'S POLICY

¶ 19 CompSource asserts it properly canceled Zaloudek's workers' compensation policy pursuant to subsection (G) of section 64 of title 85 of the Oklahoma Statutes which provides in relevant part:

> G. No contract of insurance issued by a stock company or mutual association or other concern against the liability arising under this act shall be canceled within the time limited in such contract for its expiration until at least ten (10) days after notice of intention to cancel such contract, on a date specified in such notice, shall be filed in the office of the Administrator and also served on the employer. Such notice shall be served on the employer by delivering it to the employer or by sending it by mail, by registered letter, addressed to the employer at the employer's last-known place of residence; provided that, if the employer is a partnership, then such notice may be so given to any one of the partners, and if the employer is a corporation, then the notice may be given to any agent or officer of the corporation upon whom legal process may be served ...

Zaloudek argues § 64(G) is only a notice provision and CompSource is only able to cancel a policy for one of the eight reasons found in section 3639(C). As mentioned earlier, we find that section 3639(C) is not applicable to CompSource so the question therefore becomes whether CompSource may properly cancel a workers' compensation policy because an insured failed to participate in the audit. We hold that it may.

¶ 20 Section 142 of title 85 of the Oklahoma Statutes [32] requires the premiums for any policy period to be paid to CompSource and adjusted according to the contract of insurance. It provides as follows:

> Premiums for any policy period *shall be paid* into CompSource Oklahoma *and adjusted* according to the contract of insurance. If such adjusted premium is more than the premium paid at the beginning of the period, the employer shall pay the difference immediately upon notification of the amount of premium due. If such adjusted premium is less than the premium paid at the beginning of the period, the employer shall at the employer's option receive either refund of the difference or a credit of the amount thereof on the employer's account with CompSource Oklahoma.

CompSource asserts the audit is necessary in order to make the required adjustment of premium. Paragraph 5 of subsection A of section 134 of title 85 of the Oklahoma Statutes [33] grants CompSource the authority "[t]o inspect and audit, cause to be inspected and audited, or require production of the records of employers insured with or applying for insurance with CompSource Oklahoma against liability for compensation." CompSource argues that the only proper way to satisfy the section 142 mandate is to condition cancellation on receiving audit information. We agree with CompSource's interpre-

9. To administer a program in compliance with Section 924.3 of Title 36 of the Oklahoma Statutes, whereby employers may appeal rating classification decisions which are disputed. CompSource Oklahoma shall notify employers of the availability of the program.

31. Zaloudek claims that CompSource is licensed by the Insurance Department based upon its inclusion in a list of licensed insurers obtained from the Insurance Department's website. However, upon closer inspection this same website states that "[p]lease note, the Oklahoma Insurance Department does not have regulatory authority over CompSource." (http://www.ok.gov/oid/faqs.html, paragraph 2, under the heading "Workers' Compensation" as of June 28, 2012).

32. 85 O.S. Supp.2002, § 142; renumbered as 85 O.S.2011, § 391 by 2011 Okla. Sess. Laws c. 318, § 88.

33. 85 O.S. Supp.2008, § 134; renumbered as 85 O.S.2011, § 382 by 2011 Okla. Sess. Laws ch. 318, § 88.

tation especially considering the legislature has authorized CompSource to cancel a policy of insurance if an insured defaults in the payment "required to be made" to CompSource.[34] CompSource depends upon the audit information to determine required payments. If the insured fails to provide audit information then CompSource has no way to 1) determine if a "default in the payment required to be made" has occurred and 2) make the premium adjustments mandated by section 142.

¶ 21 In its final order the trial court found Zaloudek's counter-motion for summary judgment and its claims for equitable estoppel to be moot based upon its finding that section 3639(C) applies to CompSource. We reverse the trial court's ruling on section 3639(C)'s applicability. The trial court stayed Zaloudek's remaining claims pending this appeal. In its counter-motion for summary judgment Zaloudek alleges it sent the requested audit information prior to the March 3, 2011, cancellation of its policy. On this appeal we have reviewed only issues of law. We do not rule today as to whether or not CompSource properly canceled Zaloudek's policy. Those issues remain for the trial court's determination upon remand. Our holding determines CompSource is authorized to cancel a policy based upon an insured's failure to participate in the audit.

## CONCLUSION

¶ 22 For the above stated reasons, we find section 3639(C) does not apply to CompSource and CompSource is authorized to cancel a policy for an insured's failure to participate in the audit. All other issues are remanded for further proceedings in the trial court.

34. 85 O.S.2001, § 144; renumbered as 85 O.S. 2011, § 393 by 2011 Okla. Sess. Laws ch. 318, § 88. This section provides as follows:
   If any persons, firm or corporation insured by said State Insurance Fund shall default in the payment required to be made by him to the State Insurance Fund, after due notice his insurance in "The State Insurance Fund" may be canceled and the amount due from him shall be collected by a civil action against him in the

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS**

¶ 23 TAYLOR, C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, COMBS and GURICH, JJ., concur.

¶ 24 COLBERT, V.C.J., concurs in result.

name of "The State Insurance Fund", and the same when collected shall be paid into "The State Insurance Fund", and such insured's compliance with the provisions of this article requiring payments to be made to the "State Insurance Fund" shall date from the time of the payment of such money so collected as aforesaid to "The State Treasurer" for credit of "The State Insurance Fund".